[No. 10382. Department Two. June 4, 1912.]

T. J. KEGLEY, *Respondent*, v. PHIL SKILLMAN *et al.,*
*Appellants.*[1]

MORTGAGES—ABSOLUTE DEED AS MORTGAGE—BURDEN OF PROOF—EVIDENCE—SUFFICIENCY. Clear and convincing evidence is required to establish that an absolute deed was intended as a mortgage, even if there is a contemporaneous written agreement for a resale; and the same in insufficient, where the conveyance was made upon the grantee's furnishing money to redeem the property from a mortgage foreclosure sale, the grantor was given a mere option to repurchase, and remained in possession under an agreement to pay rent; especially where the option declared that it was the only contract, except the lease, existing between the parties, and there was no evidence that any debt was created.

UNLAWFUL DETAINER—RENT—PAYMENT—EVIDENCE—SUFFICIENCY. In an action of unlawful detainer, evidence that checks were given for the rent does not establish payment of the rent, where it appears that the checks covered rent for some other month, or that payment of the checks was refused for want of funds to meet them.

Appeal from a judgment of the superior court for Thurston county, Sheeks, J., entered May 9, 1911, upon findings in favor of the plaintiff, in an action for unlawful detainer. Affirmed.

*Thomas M. Vance,* for appellants.
*Troy & Sturdevant,* for respondent.

[1]Reported in 123 Pac. 1081.

Ellis, J.—Action for unlawful detainer of leased prem-
ises, and for unpaid rent. The complaint alleges the plain-
tiff's ownership of the property, the tenancy of the defend-
ants, that they had failed to pay the rent for the months
of September and October, 1910, that three days' notice in
writing to pay the rent or vacate the premises had been
given defendant, and prayed for judgment for the rent,
damages for the unlawful holding over, and for possession.
The answer denied the principal allegations of the complaint,
admitted the service of notice to quit, and set up affirmative
matter as follows:

"For an affirmative answer defendants say: That all of
the interest plaintiff owns or holds in the described premises
is an equitable mortgage by reason of certain advances made
by plaintiff; and say further that certain payments were
made by these defendants to plaintiff for the current month
of September, which were designated as rent, but which were
in fact, in equity and in good conscience intended as, and
received as, interest upon the described equitable mortgage;
and that the payment to be made in the month of October
was duly and properly paid into the Olympia National Bank
for the use of plaintiff at the time agreed for the making
of said payment, where the said payment now is subject to
the order of the plaintiff, unless the same has been drawn
by him."

This affirmative matter was traversed by the reply. From
the evidence, which is by no means clear, we gather that the
defendants were, prior to November, 1908, owners of lots
3 and 4, block 4, Chambers' addition to Olympia, subject to
a mortgage held by one Frye; that the mortgage was fore-
closed and the property sold to Frye early in November,
1908; that when the period for redemption had about ex-
pired, in November, 1909, the defendant Phil Skillman, be-
ing unable to redeem, went to one Gordon Mackay and, ac-
cording to his testimony, said: "I will convey the whole
thing to you. I think the words I used was, 'Take the whole
shooting match, because if I must lose it eventually, I would
rather you would have it than the other party;'" that Mackay

said, "I will help you out on the matter. I don't want you to lose the property."

It further appears that Mackay, being unable to make the redemption, applied to the plaintiff, who furnished the money, $1,834.67, under verbal understanding with Mackay that plaintiff should receive an absolute title to the property and that Mackay would take it off his hands in about six months. The redemption was made, and on November 5, 1909, the defendants, at the instance of Mackay and without any meeting or conversation with the plaintiff, executed to the plaintiff an absolute warranty deed of the property without reservation of any kind. On the following day, Mackay gave to the defendants, for an express consideration of $84.67, an option to purchase the property for $1,870, at any time before May 6, 1910. This instrument was a naked option, recognizing no debt and containing no undertaking on the defendants' part to buy the property or to pay the money except at their own election. The plaintiff knew nothing of this option or of any arrangement between Mackay and the defendants. The defendants, apparently under some agreement with Mackay, the nature of which is not disclosed, remained in possession of the property.

Within the six months from the time of plaintiff's purchase, the agreement between him and Mackay that the latter would take the property off the plaintiff's hands was abandoned by mutual consent. The plaintiff then for the first time came into direct communication with the defendants. On August 2, 1910, the plaintiff and the defendants entered into a written agreement whereby the plaintiff leased the premises to the defendants for a period of three months from August 1 to November 1, 1910, at a monthly rental of $18.50, payable monthly in advance, and at the time it seems, though the evidence is much confused, that the defendants paid some of the back rent from May 6 to August 2. The lease recited: "First parties agree to vacate said premises at the expiration of the said term, unless they purchase the

said property from the said second party." On the same day, the plaintiff executed to the defendants an option for the purchase of the property for $1,850, on or before November 1, 1910, the date of the expiration of the lease. The option expressly declared that it was the only agreement existing at that time between the parties excepting the lease. This lease and option were arranged through Mackay, and he a few days later wrote the defendants that there was unpaid the rent from May 16 (he testified that this date should have been May 6) to August 1, amounting, at $15 per month, to about $37.50, and certain taxes amounting to $42.40, which plaintiff had paid, and that by oversight these items had not been included in the option price. Accordingly on August 29, 1910, a memorandum signed by the plaintiff and the defendant Phil Skillman was appended to the option agreement, changing the price at which the option might be exercised from $1,850 to $1,900. This option contained no recognition of any debt from the defendants to the plaintiff, nor did it obligate them to purchase the property except at their own election.

The cause was tried to the court, and a judgment was entered for $37 and costs against the defendants, and awarding the possession of the premises to the plaintiff. The defendants appealed.

The appellants contend that the evidence shows that the deed to the respondent was intended as a mortgage, and that the money paid for it was a loan. The intention of the parties, when properly ascertained, must determine this question. It is a rule established by almost universal authority that, when property is conveyed by a deed absolute in form without any defeasance or collateral agreement in writing to reconvey, clear and convincing evidence is required to establish that the deed was intended as a mortgage. *Reynolds v. Reynolds*, 42 Wash. 107, 84 Pac. 579; *Hesser v. Brown*, 40 Wash. 688, 82 Pac. 934; *Dabney v. Smith*, 38 Wash. 40, 80 Pac. 199; *Reed v. Parker*, 33 Wash. 107, 74 Pac. 61;

*Swarm v. Boggs*, 12 Wash. 246, 40 Pac. 941; *Runyon's
Adm'r v. Pogue*, 19 Ky. Law 940, 42 S. W. 910; 28 Am. &
Eng. Ency. Law (2d ed.), 954; Jones, Mortgages (6th ed.),
§ 335.

While there are authorities which hold that, when there
is a contemporaneous agreement in writing for a resale of
the property to the grantor, courts of equity will incline to
construe the transaction as a mortgage, and that the burden
is then upon the party asserting that a conditional sale was
intended to establish that fact by clear evidence, the distinc-
tion seems to us hardly logical. If the papers do not show
upon their face an intention to create a mortgage, but rather
a conditional sale, there seems no good reason for requiring
a different measure of proof to establish an intention con-
trary to their purport in the case of two instruments from
that required where there is only one, and we see no reason
for shifting the burden of proof.

"We think the better rule is that where there is a deed
absolute in form, either with or without a contemporaneous
agreement for a resale of the property, there being nothing
upon the face of the collateral papers to show a contrary in-
tent, the presumption of law, independent of evidence, is that
the transaction is what it appears to be, and that he who
asserts that the writing should be given a different construc-
tion must show by clear and convincing evidence, that a mort-
gage and not a sale with the right to repurchase was in-
tended. This rule has the support of at least two decisions
of the supreme court of the United States. *Wallace v.
Johnstone*, 129 U. S. 58; *Bogk v. Gassert*, 149 U. S. 17."
*Johnson v. National Bank of Commerce*, 65 Wash. 261, 118
Pac. 21.

Applying this rule to the case before us, we think that the
appellants failed to establish by the requisite measure of evi-
dence that a loan and security were intended. There is no
evidence that any debt was created. The appellants did not
testify that they ever agreed, even verbally, to repay the
money. They took a mere option to repurchase the land,

and no one testified that anything different was intended. The contention that the value of the property was so greatly in excess of the consideration paid for it as to brand the transaction as an equitable mortgage cannot prevail. The evidence as to the value was conflicting. We will not discuss it further than to say that, though the value was doubtless considerably in excess of the price paid, the disparity was not so great as to overcome the clearly expressed purport of the written evidence, especially in view of the further circumstance that there was no debt, either antecedent or created at the time, and no obligation to pay. It cannot be seriously contended that, had the respondent sued the appellants for the amount he paid for this property as for a debt, he could have recovered judgment for that sum. The transaction manifestly lacked the reciprocal obligations necessarily incident to a mortgage. *Sullivan v. Woods,* 5 Ariz. 196, 50 Pac. 113; *Johnson v. National Bank of Commerce, supra.*

The claim that the rent was paid for the full term was not established. A paid check for $18.50, bearing memorandum, "Rent Sept.," is in evidence, but the respondent testified that it was given in payment of the rent for August, and there was no evidence that the August rent was otherwise paid. Another check bearing a memorandum, "Sept. and Oct. rent," was also introduced. It was dated November 12, 1910, and made payable December 17, 1910. The respondent presented it at the bank for payment before the latter date, and payment was refused for lack of funds. The appellant claims that the money to meet this check was subsequently placed in the bank, but admits that he still later checked it out. In any view of the matter, he cannot claim that this check was a payment, when he failed to leave the money in the bank with which to meet it.

The judgment is affirmed.

DUNBAR, C. J., FULLERTON, MORRIS, and MOUNT, JJ., concur.