[No. 19429.   Department One.   January 12, 1926.]

DUDDY-ROBINSON COMPANY, *Appellant*, v. J. W. TAYLOR
et al., *Respondents*.[1]

[1] CORPORATIONS (98)—MEMBERS AND STOCKHOLDERS—LIABILITIES—
REDUCTION OF STOCK—RECOVERY BY CORPORATION. A corporation
may recover from stockholders the amount illegally paid to them
on the company's repurchase of their stock, in violation of Rem.
Comp. Stat., § 3823, prohibiting such a purchase and reduction
of the capital stock, and making the officers and directors par-
ticipating in such action individually liable therefor.

[2] CONTRACTS (53)—VALIDITY—RELIEF OF PARTIES IN PARI DELICTO.
The rule denying relief to parties *in pari delicto* does not apply
where public policy requires the intervention of the courts, and
protection to the public would be made more effective by allow-
ing such recovery.

Appeal from a judgment of the superior court for
Yakima county, Hawkins, J., entered December 23,
1924, dismissing an action to recover money illegally
paid to stockholders, upon an order sustaining a de-
murrer to a complaint. Reversed.

*Holden, Shumate & Cheney,* for appellant.

*Rigg & Venables* and *Nat U. Brown,* for respondents.

ASKREN, J.—Plaintiff brought this action to recover
from defendants the sum of $10,099.56, alleged to have
been received from plaintiff as consideration for the
repurchase of shares in the plaintiff corporation. From
an order sustaining a demurrer to the complaint and
dismissing the action this appeal is prosecuted.

The complaint alleged that appellant is a Washing-
ton corporation, and that in April, 1920, the respond-
ents became the owners of 93 shares of the capital stock
of appellant of the par value of $100 per share; that
between August, 1921, and November, 1922, the direc-

¹Reported in 242 Pac. 21.

tors and officers of the corporation repurchased from respondents the 93 shares of capital stock for the sum of $10,099.56; that the shares of stock were delivered for cancellation, and were never reissued; that respondents knew that the money paid them out of the capital of the corporation was money of the corporation; that the payment reduced the capital of the corporation in the sum of $10,099.56; that thereafter the officers and directors of the corporation who made and consented to the payments were removed and the management changed; that, at the time the moneys were paid, appellant was a going concern, but had debts which it could not pay; that it still has outstanding creditors whom it is unable to pay in the ordinary course of business, or at all. Appellant tendered into court for respondents the 93 shares of its capital stock referred to, and prayed for the return of the money paid for it.

[1] The trial court was of the opinion that the facts alleged in the complaint showed that both parties to the transaction were guilty of an illegal act; that the corporation had no right to purchase shares of its capital stock from a stockholder, and that a stockholder had no right to enter into a contract to sell to the corporation; that each of the parties was then in *pari delicto,* or of equal guilt, and that the court, therefore, should not give assistance to either party, but leave them in the same condition they were in at the time of applying to the court. To determine whether the court's ruling was correct, it is well to consider the statute which makes such a contract as the one in question illegal. Rem. Comp. Stat., § 3823, is as follows:

"It shall not be lawful for any trustees to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them,

any part of the capital stock of the company unless in the manner prescribed in this chapter, or the articles of incorporation or by-laws; and in case of any violation of the provisions of this section, the trustees, under whose administration the same may have happened, except those who may have caused their dissent therefrom to be entered at large on the minutes of the board of trustees at the time, or were not present when the same did happen, shall, in their individual or private capacities, be jointly or severally liable to the corporation and the creditors thereof in the event of its dissolution, to the full amount so divided, or reduced, or paid out: Provided, that this section shall not be construed to prevent a division and distribution of the capital stock of the company which shall remain after the payment of all its debts upon the dissolution of the corporation or the expiration of its charter.''

This section has received frequent attention at our hands, but it is unnecessary to cite cases since most of them are collated in *Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155, 50 L. R. A.. (N. S.) 1073. That was an action wherein a stockholder sought to compel the corporation to repurchase its stock under an agreement entered into with him. The corporation repaid a portion of the purchase price and declined to pay the balance. Upon suit to compel payment, the corporation alleged the illegality of the contract. In that case we held that the contract was in contravention of the statute, and that,

" 'The obvious purpose of the statute is to make the public records show the amount of the capital stock of a corporation; in other words, to speak the truth. It follows, therefore, that, where the capital stock has not been diminished in compliance with the statute, the original articles of incorporation operate as a continuing representation on behalf of the corporation that its capital stock is unimpaired, and that the impairment of its capital stock in any other manner is a fraud upon its creditors, both as to the corporation and all others

who participate in or profit by such an act.' *Union Trust Co. v. Amery*, 67 Wash. 1, 120 Pac. 539.' ''

In that case it was urged that, inasmuch as the corporation was solvent and had no creditors, a distinction should be found between that case and those in which the rights of creditors already attached. This was rejected in the following language:

''Our statute is sustained by a sound public policy and a due regard for creditors, present and prospective, and associate stockholders.''

It was held that the statute contemplates transactions that might arise in faith of the capital stock, and yet broad enough to protect new creditors and, also, stockholders who are not parties to the prohibited contract. The reasoning in that case is made to depend, not alone upon the statute prohibiting such illegal agreements, but upon the broad ground of public policy, which will not permit the directors of a corporation to perform an act which undermines the capital stock and stability of the corporation with whom the public deals.

[2] Appellant argues that it is not in *pari delicto,* or equal guilt, with respondent, for the reason that the corporation represents all the stockholders, and, to some extent, its creditors, and that only the directors who performed the illegal act are of equal guilt. This raises a very interesting question which we do not deem it necessary to decide, for even though it be assumed that both are of equal guilt, we think this case comes under the exception to the general rule. That exception is stated in 13 C. J. 497:

''Although the parties are in *pari delicto,* yet the court may interfere and grant relief at the suit of one of them, where public policy requires its intervention, even though the result may be that a benefit will be derived by plaintiff who is in equal guilt with defendant. But here the guilt of the parties is not considered

as equal to the higher right of the public, and the guilty party to whom the relief is granted is simply the instrument by which the public is served. But 'courts are and should be cautious in affording relief to a fraudulent debtor or other violator of the law under this exception, and should act only where it is evident that some greater public good can be subserved by action than by inaction.''

The question thus simplifies itself. Will the public good be enhanced by permitting a recovery of money unlawfully paid out by a corporation to repurchase its capital stock, where the stock has not been reissued, and where the same can be, and is, tendered to the seller, or will it be best subserved by refusing to interfere?

It seems to us that one of the ways to make this statute effective and to discourage the selling of its stock to a corporation is to enforce the repayment of the money received therefor, even though the act of purchase was illegal. It cannot be doubted, under our decision in *Kom v. Cody Detective Agency, supra,* that the rights of the public dealing with corporations was intended to be protected by the statute under consideration; and that, if continued violations of the law are to be permitted without redress, other than action against the trustees to enforce their liability under the statute, that the rights of the public will always be subject to impairment.

Counsel for respondent admit that, under the facts, alleged recovery could be had, if the appellant were to become insolvent and suit were brought by the receiver, but urge that, since the rule of recovery is different in such an action, no recovery can be had by the corporation.

This brings us to an anomalous situation. Appellant alleges that, at the time of the purchase of the stock, the corporation had debts which it could not pay, and

still has outstanding creditors whom it is unable to pay in the ordinary course of business, or at all. This practically amounts to an allegation of insolvency. The logic of respondent's contention is that, if this concern be taken over by a receiver, recovery may be had, but, so long as it attempts to transact business, recovery will be denied; and that, although this money illegally received by respondent may be sufficient, if returned to the corporation, to allow it to continue in its ordinary course of business, yet the law will not permit it to wage this action to rehabilitate its assets and protect its stockholders and creditors. But we think such a construction of our decisions is unwarranted when applied to the facts in this case. Under our decision in *Kom v. Cody Detective Agency, supra,* the fact that there are outstanding creditors who cannot be paid in the ordinary course of business, would be immaterial, but certainly the allegation of such a situation must bring home to the parties to this contract the dire necessity of allowing a recovery, if warranted by law.

A similar case was presented in *Darnell-Love Lumber Co. v. Wiggs,* 144 Tenn. 113, 230 S. W. 391. In that case a stockholder brought suit to set aside the sale by him to the corporation of shares of its capital stock. The court, after holding that sound public policy would not permit the corporation to purchase shares of its stock, thereby reducing its assets to the detriment of those with whom it might deal, answered the contention, that the parties were in *pari delicto,* as follows:

"Assuming the parties in equal wrong, though their respective circumstances and action at the time of making the contract might well constitute a basis for argument that such is not true, the rule referred to is undoubtedly of general application where relief is sought upon illegal contracts which involve no consideration of the public welfare, but a well-grounded exception to this rule is found in those cases wherein the public good

is to be promoted by permitting a disaffirmance of the contract although in so doing a party to its illegality may be benefited thereby.''

Then quoted from 6 R. C. L., § 220, p. 829, and *Hale v. Sharp,* 4 Cold. (Tenn.) 275-281.

It was also urged in that action that, while the corporation might disaffirm the contract, and upon return of the stock recover the consideration paid, that right did not belong to the stockholder, since he represented no creditors or stockholders whose rights or security had been invaded. But the court said that, even though the right might not be reciprocal, yet to permit repayment of the money and the transfer of the stock would accomplish the announced policy of the statute prohibiting the reduction of the capital stock in such a manner, and that it should be permitted. In that case the court also distinguished a case relied upon here by respondents; *St. Louis, V. & T. H. R. Co. v. Terre Haute & I. R. Co.,* 145 U. S. 394. It was specifically pointed out in that case, which involved a lease of railroad property held to be illegal, that the record did not disclose special considerations of equity and justice or public policy justifying the court in relaxing the rigor of the rule of *pari delicto* barring recovery, and that the situation of the parties was such that to permit recovery would, under the peculiar circumstances, be inequitable, and also would contravene the object of the Sherman Law and the purpose of the government suit. As before stated, we think the public policy of the state and the prohibition announced in the statute will be best subserved by permitting recovery.

The judgment of the trial court is reversed with instructions to overrule the demurrer.

TOLMAN, C. J., HOLCOMB, FULLERTON, and PARKER, JJ., concur.