[No. 19981.  Department Two.  December 6, 1926.]

JAMES ALEXANDER WAKEFIELD, *Appellant*, v. W. E.
GREENWAY *et al., Respondents.*[1]

[1] MORTGAGES (23)—EVIDENCE AS TO CHARACTER OF TRANSACTION—
SUFFICIENCY.  An absolute deed is not shown to have been in-
tended as a mortgage by sufficiently clear and convincing evi-
dence, where there was a direct conflict in the oral testimony
of the parties as to their intention, and the writings authorizing
its delivery made time the essence of the contract, supported
by the fact that no note was given or interest paid upon it, and
other circumstances clearly indicate an absolute sale (TOLMAN,
C. J. dissenting).

Appeal from a judgment of the superior court for
King county, Paul, J., entered October 10, 1925, upon
findings in favor of the defendants, in an action for
equitable relief, tried to the court.  Affirmed.

*Rummens & Griffin,* for appellant.

*Roberts & Skeel,* for respondents.

ASKREN, J.—This is an appeal from a judgment of
the trial court in favor of the defendants in an action
seeking to have a certain deed, absolute in form, de-
clared to be a mortgage in fact.

[1] The assignments of error raise only one ques-
tion: Was the evidence sufficient to establish the fact
that the deed was in reality a mortgage.  The salient
parts of the evidence are briefly as follows:

The appellant, a lawyer by profession, but engaged
in the real estate business in Seattle, formulated a plan
whereby the owner of several residence properties in
that city could buy the Carolina Courts which were
then for sale, but a certain amount of the purchase
price of which was to be in cash.  The plan was that
Wakefield would secure purchasers for the residence

[1]Reported in 251 Pac. 112; 256 Pac. 503.

properties so that the proceeds thereof could be used for the cash payment on the Carolina Courts. An agreement of this character was entered into, and Wakefield was to have for his services any sum realized on the residence properties above the amount necessary to be paid in cash to complete the Carolina Courts purchase. In securing purchasers for the residence properties, Wakefield engaged the services of another dealer named Tripp, who sold one of the houses to the respondent Greenway, he being at that time an occupant thereof.

As the time for closing the deals approached, Wakefield found that two of the properties could not be realized upon immediately, and arrangements were made to secure a balance of two thousand, nine hundred and ten dollars. Tripp, in behalf of Wakefield, went to Greenway to secure this amount of money, and it was secured. Whether it was a loan is the crux of this action. Tripp testified, in effect, that he told Greenway that arrangements had already been made to secure three thousand dollars, less three per cent commission, or two thousand nine hundred and ten dollars, net, but that the loans could not be made fast enough and the whole deal would fall, if they failed to get the sale of the last two houses through; that Greenway and Monroe then agreed to put up that amount of money for a fifty dollar bonus; that the question then arose as to what should happen in case the deeds were put up and the deal did not go through, and that he referred them to Wakefield. Wakefield testified that the whole deal was a loan; that the fifty dollars agreed to be paid was a bonus therefor, and that the deal at first was for three days and then extended to ten days. The witnesses for respondents were just as positive in their testimony that the transaction was not a loan in any sense of the word, but was a deal whereby the two

properties were to be sold to them at a minimum price of two thousand nine hundred and ten dollars, but within the time agreed upon,—first three days and then ten days,—if appellants could make a sale to other parties, they would accept their money back with fifty dollars for their trouble.

From what we have just detailed of the evidence, it is apparent that there was a decided and sharp conflict in the oral evidence.

We next come to the written evidence: On January 17, 1925, the respondents delivered to the Washington Title Insurance Company the following letter:

"Gentlemen: We hereby leave with you our check for $2,910. Please do as follows: Turn the money over to the order of J. Alexander Wakefield when you deliver to us your title insurance policy in a sum of not less than $2,500 each on:

"Lots 15 and 16 of Block 9—Osner's Third Addition to Seattle.

"Also another policy of not less than $2,500 on Lot 1, and lot 2 of Blk. 6, of Weedin's Homestead Addition to Seattle.

"All expenses of every kind to be paid by the parties who will receive our money, including their deed to us. Each deed should be made in favor of W. E. Greenway and Henry A. Monroe. Each property must be free and clear of any and all encumbrances.

"In the event you cannot do as outlined in the above instructions, please return our money to us by five o'clock Monday evening, Jan. 19, 1925. To be more explicit, the parties receiving our money are to pay for recording our deeds.      GREENWAY AND MONROE

"W. E. GREENWAY

"HENRY A. MONROE."

On January 24, a new letter of instructions was given the company, as follows:

"Gentlemen: On Jan. 17, 1925 we, the undersigned, left with you $2,910.00 as the full purchase price to us of:

"Lots 15 and 16 in Block 9—Osner's Third Addition to Seattle; also, Lots 1 and 2 in Block 6 of Weedin's Homestead Addition to Seattle.

"The above properties are to be deeded to us by their record owners free and clear of all encumbrances. Title insurance for not less than $2,500 is to accompany each property.

"Our first instructions were to return our money unless we received our deeds by Monday evening Jan. 19, 1925, but orally, we extended that time until this day, (Jan. 24, 1925).

"We now set a final date as of five o'clock Tuesday afternoon of Jan. 27, 1925.

"Please do as follows from now until that date: Hold the deeds and the title insurance policy until Tuesday evening, unless J. Alexander Wakefield or his assigns or agents deposit with you the sum of $2,960 in cash, in which event you will deliver the deeds to him and the $2,960 to us.

"Again, if Mr. Wakefield deposits with you $1,500 only on or before Tuesday evening of Jan. 27, 1925 you will deliver to him the deed to either one of the above described properties he selects and you will deliver to us the other deed and the title insurance policy.

"We are doing this to accommodate Mr. Wakefield, but time is the essence here, and the final limit is five o'clock Tuesday evening of January 1925.

    (Signed)  "W. E. GREENWAY
              "HENRY A. MONROE"

"O.K.J.A.W.
"Accepted:
"Washington Title Insurance Company
"David R. McCoy,
"Esc. Dept."

It is agreed by all parties that the two thousand nine hundred and ten dollars was not returned by the time limit set in either of the above written instructions. On January 29, appellant Wakefield sent the following letter to the title company:

"Gentlemen: You have various deeds from Osner & Mehlhorn, inc., and August Mehlhorn, Jr., which you

will deliver upon payment of the following amounts from the following parties:   .  .  ;

"W. E. Greenway  .  .  .  $6,210.00.  .  .  .
            (Signed)  "J. ALEXANDER WAKEFIELD."

In conformity thereto the deeds were delivered to Greenway. All parties admit that six thousand two hundred and ten dollars referred to therein was the amount of the purchase price of the home Greenway then lived in,—three thousand three hundred dollars plus the two thousand nine hundred and ten dollars,— which is the subject of this inquiry, and that the deeds delivered were one to the Greenway home, and the other to the two properties here in question. No note was given for the two thousand nine hundred and ten dollars, and no rate of interest as such agreed upon. The deed itself is absolute in form, and there is nothing therein to indicate other than a purchase and sale.

There appears to be nothing in the two letters of instructions given to the title company on January 17 and January 24, which indicates that a loan was in contemplation of the parties, or that could be so construed, unless it be found in the language of the letter of January 17, wherein it is said:

"All expenses of every kind to be paid by the parties who will receive our money, including their deed to us. .  .  .  To be more explicit, the parties receiving our money are to pay for recording our deeds."

Appellants argue that these words, which show that Wakefield was to pay for the recording of the deeds, indicate that it was intended as a loan; for it is customary for the mortgagor to pay for the recording of a mortgage, but not for a grantor to pay for the recording of a deed. One of respondents testified that he had, on at least two other occasions, required the grantor to pay for the recording of a deed. We think the more reasonable construction is that contended for by ap-

pellant, but that fact alone is not sufficient to overcome the other written instruments. It must be borne in mind that the last letter of instructions, dated January 24, signed by respondents, and bearing the O. K. of Wakefield, specifically declares that the final date is January 27, 1925, and that "time is the essence here". Courts construe these words to be binding and legal between parties to a contract where none of them are members of the legal profession.

In the instant case, appellant, a lawyer by profession, placed his stamp of approval upon it, and does not claim that he did not understand its full legal effect. Two days after the final limit expressed therein, he signed a letter to the title company authorizing the delivery of the deed to Greenway upon the consideration of two thousand nine hundred and ten dollars. To some extent, at least, this was a recognition of the fact that he had failed to comply with the ten-day limit. But a more potent factor is that it appears from the testimony that, not until February 19, was complaint made that the deeds were in fact mortgages, and an offer made to pay back the money advanced. At that time, respondents were negotiating for the sale of one of the properties, and offered to restore both properties upon the payment of the money advanced and five hundred dollars additional, which was refused. This is seized upon by appellant as indicating a recognition of the fact that the original transaction was a loan. Its effect, however, is as compatible with one theory of the case as the other.

Another fact that appellant urges as showing that this was a loan is that neither Greenway nor Monroe had inspected the inside of the residence properties. It appears that, before the question of the two thousand nine hundred ten dollars entered into the transaction, Tripp was endeavoring to get Greenway to pur-

chase contracts on these houses, provided he could get purchasers for them, and took Greenway out to inspect the houses, and that the only inspection made was from the outside. But again, we are met with the fact that this evidence supports either theory. Appellant says that, if the respondents had been purchasers, they would have looked them over inside. But it must be remembered that one who loans money on a house usually desires inside inspection also. The amount of money advanced was the same in either case, and properties that are sufficient in value to justify a loan of two thousand nine hundred ten dollars would ordinarily be good buys at the same price.

The evidence is undisputed that these two properties were afterwards sold for approximately four thousand five hundred dollars, one of them being sold on long time contract upon a cash payment of one hundred dollars, and it is urged that the inadequacy of the price received by appellant from respondents, two thousand nine hundred and ten dollars, establishes the loan character of the transaction.

This is a circumstance to be taken into consideration with all the other evidence, and is entitled to some weight. There is nothing conclusive, however, in the fact that the property sold shortly after this deal at an increase of approximately one-third over the amount advanced. The necessities of parties often lead them to sell at reduced figures, and he who re-sells may often obtain a high price when selling on contract with a very small payment down. The evidence shows that respondents offered to take five hundred dollars and re-deed the properties, because they felt that five hundred dollars in cash was more valuable than the rights under the contract for long time monthly payments with only one hundred dollars down. The

amount noticed here as to the sale of these properties is not so grossly disproportionate to the original amount given by respondents as to be controlling in weighing the evidence.

Our decisions clearly uphold the view that when one seeks to show that deeds, absolute upon their face, are in fact mortgages, the evidence thereof must be clear and convincing, and must show that both parties intended them to be such. In *Washington Safe Deposit & Trust Co. v. Lietzow*, 59 Wash. 281, 109 Pac. 1021, we disposed of a like question in the following language:

"No note or other written evidence of appellant's indebtedness was given by him. A deed absolute upon its face will not be held a mortgage except upon clear, convincing, and positive evidence. Had the parties intended this deed to be a mortgage, it would not have been difficult to execute some instrument or memorandum signed by one or both of them disclosing such intention."

Again in *Nutter v. Crowley Investment Co.*, 85 Wash. 207, 147 Pac. 896, we reaffirmed the holding in *Washington Safe Deposit & Trust Co. v. Lietzow*, *supra*, saying:

"We have carefully examined the evidence and conclude that the trial judge erred in holding the deed to be a mortgage. We are satisfied that it was an absolute conveyance, and was so intended by the parties. All written instruments before us indicate this fact most clearly. No note was executed to respondents by appellants. We have repeatedly announced the rule that when property has been conveyed by a deed absolute in form, without any contract of defeasance, or other written instrument showing that it was intended as a mortgage, clear, convincing and cogent evidence will be required to establish the contention that it was intended as a mortgage. *Washington Safe Deposit & Trust Co. v. Lietzow*, 59 Wash. 281, 109 Pac. 1021;

*Dempsey v. Dempsey,* 61 Wash. 632, 112 Pac. 755; *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21; *Kegley v. Skillman,* 68 Wash. 637, 123 Pac. 1081; *Hansen v. Abrams,* 76 Wash. 457, 136 Pac. 678.''

The trial court, in its memorandum decision, expressed the belief that the appellant considered the transaction as a loan, but held that the evidence supported the theory of respondents as reasonably as the theory of appellant, and that, therefore, there was not clear and convincing evidence that the deed was in fact a mortgage. A detailed study of the evidence convinces us that, while there is evidence which points to the probability that this transaction was a loan, it is not of that clear and convincing character which justifies us in saying that the transaction was a loan, and intended by both parties thereto to be such.

The judgment is affirmed.

MACKINTOSH, PARKER, and MITCHELL, JJ., concur.

TOLMAN, C. J. (dissenting)—The evidence satisfies me that nothing more than a loan was intended. I therefore dissent.

## ON REHEARING.

[*En Banc.* June 3, 1927.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the opinion heretofore filed herein. The judgment is therefore affirmed.