[No. 21418. Department Two. November 27, 1928.]

BIG BEND MILLING COMPANY, *Appellant*, v. W. F. DRAKE *et al., Respondents.*[1]

*Pettijohn & McCallum,* for appellant.

*Charles J. Webb* and *Voorhees & Canfield,* for respondents.

ASKREN, J.—This action was brought to recover $4,593.98, paid by a corporation on a note given in connection with a transaction which the plaintiff claims

[1]Reported in 272 Pac. 39.

was a purchase by the corporation of its own stock. From a decree entered by the court holding that the transaction in question was a loan and not a purchase, this appeal was taken.

■ It is admitted by all parties to this controversy that if the transaction was a purchase it was illegal, under our decisions in *Duddy-Robinson Co. v. Taylor,* 137 Wash. 304, 242 Pac. 21, where we held that a corporation can not legally purchase its own stock, and that if it does the corporation may sue and recover the money paid therefor. We turn therefore to the facts.

Prior to 1920 the appellant was engaged in the grain and flour business at Davenport, Washington. In February of that year much of its property was destroyed by fire. The stockholders being desirous of disposing of the balance of their property, a plan was formulated which had for its purpose the transfer of the stock to new stockholders, the payment to the old stockholders of the value of their equity, and the rebuilding of the mill and purchase of machinery by the new stockholders, with the intent to transform the corporation into a going business concern such as it was before the fire. As a part of the scheme, the machinery of another corporation, The Lincoln Milling Company, was to be installed in the new mill and that corporation was to receive shares of stock in the appellant corporation in payment therefor. The owners of the stock of the Lincoln Milling Company were T. A. Lantzy and P. S. Lantzy. T. A. Lantzy and one Imus, an officer of the Davenport National Bank, were the active promoters of the deal for reorganization. It became necessary for new stockholders to be obtained to furnish money for the reorganization. Accordingly Lantzy went to the home of the respondents for the purpose of selling stock to them. What there transpired is in conflict; Lantzy's testimony indicating that

the respondents agreed to purchase stock in the amount of $6,500, while respondents testified that they refused to purchase stock, but did finally agree to loan the corporation that amount of money. The testimony of Lantzy is not very convincing. To some extent it is corroborative of that of the respondents. On cross-examination he was asked:

"Q. Did you ever at any time ask Mr. Drake to loan $6500 to the Big Bend Milling Company? A. My approach was on buying stock, and I told him if he would take this stock so we could fill the subscription that I would see that he got his money back, and would guarantee him eight per cent."

Again:

"Q. Mr. Drake told you he never had subscribed and wouldn't buy any capital stock of any corporation, didn't he? A. He told me in the first place that he did not care to buy stock, that he didn't buy stock, it was not in his line of business really, that he never had bought stock in the past."

But there was further evidence that this transaction was a loan. Lantzy afterwards made statements to other parties showing that the transaction was a loan. This evidence, believed by the court, was sufficient to destroy the claim made by Lantzy on the trial that the transaction was a purchase and not a loan.

Appellant insists that, since the books of the corporation showed the transaction as a sale, the evidence should be clear, convincing and unequivocal. *Wakefield v. Greenway*, 141 Wash. 204, 251 Pac. 112, 256 Pac. 503. But we think it is in this case. The purpose of placing the transaction in the books as a sale, and not as a loan, was shown by testimony to have been explained by Lantzy as "making a better showing for the bank." The stock was delivered to respondents some time after the transaction, and it is urged that this was evidence of sale. But the delivery

of stock in itself is not greater evidence of a sale than it is of a pledge. Respondents contended that it was held as security.

Later on respondents were given a note to represent the loan, although this matter is referred to on the books of the company as a purchase by the corporation of the stock which respondents held. We agree with the appellant that many of the written evidences of the transaction indicate it to be a purchase, but it must always be borne in mind that as to most of these writings respondents were not parties thereto and had no knowledge thereof. Further recital of the evidence and inferences to be drawn therefrom is unnecessary.

After carefully perusing the evidence in this case we fully agree with the trial court that, "It is not often when courts are called upon to determine what is the real agreement, when it is in dispute, that the proof is so satisfactory as it is here."

Since this point is conclusive of the case, it is unnecessary to consider other questions urged by respondents.

Judgment affirmed.

FULLERTON, C. J., FRENCH, MAIN, and PARKER, JJ., concur.