444

[No. 23872. Department One. December 12, 1932.]

FIRST UNIVERSITY INVESTMENT CORPORATION, *Respondent*, v. ROOSEVELT SAVINGS AND LOAN ASSOCIATION, *Appellant*.[1]

*Shumate & Clarke,* for appellants.

*Philip D. Macbride* and *George W. Williams,* for respondent.

HOLCOMB, J.—Appellant, a domestic savings and loan association, in November, 1929, as lessee, entered into a lease contract with respondent as lessor for a term of three years and nine months commencing January 1, 1930, and ending September 30, 1933.

Two suits were brought by respondent to recover rent from appellant at the monthly rental of $225, as stipulated in the lease, the first suit being for two months rent, or $450, and reasonable attorney's fees as provided in the lease, for the months of June and July, 1931. The second suit was for three months rental for August, September and October, 1931, or $675, and reasonable attorney's fees as provided. Ap-

[1]Reported in 16 P. (2d) 820.

pellant entered into possession of the premises and paid the rental as stipulated until the end of May, and occupied them until the end of July, 1931, when, after unsuccessfully attempting to obtain a reduction of the rental from respondent, it moved to other quarters at much less monthly rental.

The two actions were consolidated for trial by the lower court, were tried together, and are consolidated here by stipulation. The answer of appellant in both actions is substantially the same, and in each suit a counterclaim and cross-complaint were set up for cancellation of the lease. After a trial to the court, judgments were rendered in each case for the stipulated rental and fifty dollars as attorney's fees in each suit. The judgment also dismissed the counterclaims of appellant in both suits.

It appears from the record that appellant is the successor of the American Savings & Loan Association, a domestic corporation, which first had its principal place of business at Everett, moved to Seattle, and changed its name to Universal Savings & Loan Association. After transacting business in Seattle for some years prior to November 29, 1929, and going through a process of liquidation, its resources had been reduced to approximately twenty-two thousand dollars. Permission was obtained from the state examiner of savings and loan associations to take over the assets of the Universal and change its name to Roosevelt Savings and Loan Association. At the time the lease in question was signed and delivered, the only assets appellant had were what it had taken over from the old Universal.

It appears that a concern called the Barron Corporation was the moving party in procuring the change and organization of the new company. There was an oral understanding between the Barron Corporation and

the directors of the new corporation, to which respondent was not a party, that the rent and other necessary overhead would be paid by the Barron Corporation until such time as the earnings and assets of the new association would justify the paying of the overhead, including rent, out of the earnings of appellant. The rent and other overhead for 1930 were paid by the Barron Corporation. The directors of appellant continued the agreement with the Barron Corporation, by oral understanding, for 1931, it being agreed that appellant would advance the rent commencing January 1, 1931, and be reimbursed for such expenditures by the Barron Corporation. The Barron Corporation became financially involved and was unable to reimburse appellant for the overhead, including rent, for 1931.

The total overhead expenses of appellant for 1931, including rent paid, amounted to $3,769.22. Its average assets during 1931 amounted to $147,706.37. Appellant contends that, because the expenses actually paid out during 1931 were in excess of two and one-half per cent of the average deposits on hand in the sum of $76.50, of which respondent had no knowledge or notice, the lease contract became unlawful, *ultra vires* and void.

The statute limiting expenses of savings and loan associations, Rem. Comp. Stat., § 3730, reads:

"The expenses of such association shall be paid from its earnings, and no deduction from dues shall be made either directly or indirectly for that purpose. No such association shall pay or be or become liable to pay either directly or indirectly in the course of any calendar year as salaries, commissions, fees, or other compensation to its officers, directors, auditor, attorneys, agents, clerks and all other employees and for rent, advertising, and all other operating expenses, sums of money the aggregate of which shall exceed two and one-half per cent of the average amount of

assets of such association during such year. The term 'operating expenses' as used in this connection shall not be construed to include membership fees, taxes, assessments, repairs or insurance on real estate or commissions on the sale of real estate, or on the placing of loans, or any interest which the association may have paid or become liable to pay, proper legal charges for searching titles or the preparation of legal papers, expenses of foreclosure suits or other bona fide litigation, nor charges for state license. The provisions of this section, in so far as they limit the expenditure for expenses, shall not apply to any association whose accumulated capital is less than forty thousand dollars: *Provided, however,* That the annual expenses of every such latter association shall not exceed a total of one thousand dollars. The provisions of this section shall apply as well to foreign as to domestic corporations doing business under the permission and certificate of the state auditor and said auditor shall not renew such permission or issue such certificate to any corporation that shall have violated the provisions of this section.''

Appellant asserts that the statute is mandatory and not directory, prescribes a broad public policy for the protection of the public, and consequently made the lease entered into for the payment of a monthly rental, in addition to its other overhead expenses, *ultra vires,* void and unenforceable.

■ We concede that respondent must necessarily have taken notice of the statute when entering into a lease with a savings and loan association, and was bound to take notice of the limited power imposed upon appellant by law.

We cannot agree, however, that the statute above quoted makes such a lease *ultra vires* and void. Manifestly, savings and loan associations must have quarters in which to do business, and it is to be presumed that their managing officers procure the most suitable premises available for the transaction of their business. No statute has been cited to us which prohibits such

an association from entering into a term lease. To accept the construction of the statute of appellant would compel any property owner wishing to lease its premises to such an association to have an expert examination of the books of the association before it could tell whether the lease would be valid or not. Appellant would have us say that, although a savings and loan association may enter into a lease, if its expenses become too great it would then have the right to elect between those whom it will pay and those whom it will not and, as to the latter, its contract becomes *ultra vires* and unenforceable.

In *United States Fidelity & Guaranty Co. v. Cascade Construction Co.,* 106 Wash. 478, 180 Pac. 463 (not cited by either party), we quoted approvingly from texts and authorities in brief, as follows:

"The doctrine of *ultra vires* as a defense dies hard. . . . But it is a defense not favored in law. . . . It will not be allowed to prevail where it would defeat the ends of justice and work a legal wrong. . . . It should never be applied when it will defeat the ends of justice where such an event can be avoided."

We also cited cases approvingly to the effect that, where the defending corporation interposing the plea of *ultra vires* had received or reserved some benefit from the transaction, that plea would not ordinarily be allowed. Appellant cites texts and authorities sustaining its contention that no rents can be recovered under an *ultra vires* lease, and quotes largely from *Oregon R. & N. Co. v. Oregonian R. Co.,* 130 U. S. 1; *Jackman v. Continental National Bank,* 16 Fed. (2d) 728, 51 A. L. R. 336, and *McCormick v. Market Bank,* 165 U. S. 538.

The first case cited was one arising under several special acts of Congress organizing and regulating the incorporation of the railroads in question, where it

was held that the leasing of *all* of one railroad's property to the other was *ultra vires,* because its charter included no such powers. The *McCormick* case, *supra,* held that a lease entered into by a national bank before it was authorized to commence business by the comptroller was void, because it was contrary to a prohibitory statute forbidding any national bank from doing business, other than that incidental to organization, until it was so authorized by the comptroller.

The *Jackman* case, *supra,* held that a national bank receiving its own stock in pledge was in contravention of the Federal statute prohibiting a national bank from purchasing its own stock, which made such a contract *ultra vires.* In that case, it was also held that, when a contract is open to two constructions, the one lawful and the other unlawful, the former must be adopted if reasonable and permissible.

Our own case, *Duddy-Robinson Co. v. Taylor,* 137 Wash. 304, 242 Pac. 21, also relied upon by appellant, is in that same class, since our statute prohibited a corporation from purchasing its own stock, and such a contract was void *ab initio.*

These parties deliberately entered into a contract of lease without any overreaching, or deception, and not prohibited. To sustain the contentions of appellant would be to rewrite their contract and judicially legislate.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, PARKER, and MILLARD, JJ., concur.