[No. 34026. Department Two. October 10, 1957.]

A. J. COUIE, *Respondent,* v. LOCAL UNION NO. 1849 UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA *et al., Appellants.*[1]

[1]Reported in 316 P. (2d) 473.

*Tonkoff, Holst, Hopp & Martin,* for appellants.

*Day & Westland* and *Powell & Loney,* for respondent.

ROSELLINI, J.—The plaintiff, in the fall of 1953, was a member of Local Union No. 1849, United Brotherhood of Carpenters and Joiners of America. He was employed as a millwright on the Hanford project and was working under permit from the Millwrights' Local Union No. 1699. Union regulations required that he pay dues to the carpenters' local, of which he was a member and at whose meetings he was entitled to vote, and that he pay a monthly sum for his working permit to the millwrights.

On November 19, 1953, he was charged with a violation of the working rules of the Hanford Works Agreement and refusal to co-operate with the shop steward. A copy of the charges, which were signed by two of the stewards, the defendants Rathbun and Pruiett, was sent to the plaintiff by registered mail. At the next regular meeting of the millwrights' local, attended by the plaintiff, a trial committee was selected. The plaintiff was given an opportunity to present his evidence, but he walked out of the hearing room, stating that the trial committee was improperly constituted because the president and vice-president were absent from the meeting. The committee held its hearing at the next regular meeting, and the plaintiff again refused to stand trial. In accordance with the provisions of the constitution, the committee made its report and the verdict of guilty on both counts was read at the next meeting, which was not attended by the plaintiff. The members of the local voted to fine the plaintiff ten

dollars on each count and five dollars for contempt of the committee. This occurred on January 7, 1954. The constitution did not require that the plaintiff be given written notice of this action, and none was sent to him.

On February 1, 1954, he reported to the offices of the two locals, which adjoined each other, to pay his dues and permit. He was told that his dues to the carpenters' local could not be accepted until he had paid his fine to the millwrights. He gave his check for the twenty-five dollar fine and received a receipt, but the following day, he stopped payment on the check and sent a letter to the defendant King, business agent of the millwrights' local, advising him that he would release payment on the check when he had received written notice explaining the action of either local which would empower Local Union No. 1699 to demand payment of the fine. This letter was never answered, and no further attempt was made to pay the fine until April 1, 1954, when he sent a certified check for the amount, along with a money order for his working permit and assessment for one month, which were returned to him because he was no longer a member of the union. On March 23, 1954, King wrote a letter to the financial secretary of the carpenters' local, advising him that the plaintiff owed a sum equal to six months' dues and, according to the constitution, must be dropped. The plaintiff was thereupon dropped from the rolls and was notified of this fact by letter.

On February 25, 1954, the plaintiff had made an attempted appeal to the general president of the international union, but was advised by the president that his appeal could not be entertained until he submitted a receipt showing that his fine had been paid, in accordance with the provisions of the constitution. The constitution also provided that fines must be paid within thirty days to entitle the member to any privilege, rights, or donations of the union, and that appeals must be taken within thirty days after the action complained of occurred.

On March 29, 1954, the plaintiff made another attempted appeal to the general executive board of the union, and

again he was advised that he must furnish evidence that his fine had been paid. Both of these "appeals" were extremely vague regarding the plaintiff's objections to the procedure followed in the trial of his case. On July 27, 1954, the plaintiff's attorneys sent to the general president the receipt which plaintiff obtained for the check on which he stopped payment.

At the request of the general president, the matter was investigated by a representative of the international, who submitted a report, but apparently no formal decision was ever made.

After the plaintiff was dropped from the membership rolls of the union, he continued to work at the Hanford project, with pay at union rates, until June, 1954, when his employment was terminated by reason of a reduction in force. Thereafter he worked at various construction jobs, one of which he was asked to leave because he was not a union man and his employer had been advised by the business agents of the carpenters' and millwrights' locals that they would have to prefer charges against him if the plaintiff was retained. On another occasion, a prospective employer was told by the business agent of the carpenters that he, the agent, would have to put pickets on his job if the plaintiff was hired. Both of these employers were members of the union.

On April 3, 1955, upon the advice of the representative of the international who investigated his case, the plaintiff went to the office of the union to apply for reinstatement. However, he did not complete his application and abandoned it. The plaintiff and the financial secretary, with whom he talked about the application, gave different versions of the conversation, but it was not contended by the plaintiff that he was prevented from completing the application and submitting it.

This action was instituted on May 2, 1955. The complaint alleged that the defendants had engaged in a conspiracy to cause the expulsion of the plaintiff from the union and interfere with his employment thereafter. The cause was tried to a jury, which returned a verdict in the amount of

$11,000 against all of the defendants. In considering the defendants' motion for judgment notwithstanding the verdict, or in the alternative, a new trial, the court concluded that a part of the verdict was not sustained by the evidence and that the evidence was also insufficient to charge the defendants Rathbun and Pruiett with implication in the conspiracy. The plaintiffs thereupon accepted the reduced verdict. The remaining defendants, that is, the two locals and King, the business agent, have appealed.

 It is urged that the court erred in denying the defendants' motion for a judgment notwithstanding the verdict. As a general rule, on a challenge to the sufficiency of the evidence to sustain a verdict and judgment predicated thereon, the evidence is to be interpreted in the light most favorable to the plaintiff, and he is entitled to all reasonable inferences that might be drawn therefrom. However, some limitation on this rule exists in cases of this kind, where it is sought to establish a conspiracy by circumstantial evidence. The rule is stated in *Baun v. Lumber & Sawmill Workers Union*, 46 Wn. (2d) 645, 284 P. (2d) 275, as follows:

"While it is recognized that a conspiracy may be, and usually must be, proved by acts and circumstances sufficient to warrant an inference that the defendants have reached an agreement to act together for the purpose alleged, the test of the sufficiency of the evidence is that the facts and circumstances relied upon to establish the conspiracy must be inconsistent with a lawful or honest purpose and reasonably consistent only with the existence of the conspiracy."

The facts relied upon by the plaintiff in this case to establish a conspiracy can be summarized as follows: Sometime prior to the date on which he was charged with violating provisions of the Hanford Works Agreement, the millwrights' local, of which plaintiff was not a member and at whose meetings he was not entitled to vote, had taken under consideration a system for qualifying millwrights (which the defendant King favored and the plaintiff opposed) and had voted it down. The plaintiff was charged with violation of a provision which other members

had also violated without disciplinary action being taken. The president and vice-president were absent from the meeting at which the charges were read and the trial committee was constituted. (The plaintiff had no objection to the committee members and did not question their honesty or integrity.) The plaintiff was given no written notice of the verdict of the committee and the action taken upon it by the union membership. When he asked the defendant King what the fine was for, King refused to tell him. When he was later dropped from the rolls for non-payment of the fine, the defendant King and the agents of the carpenters' local misinterpreted the provisions of the constitution, which directed that a member owing a sum equal to six months' dues should be automatically dropped. And finally, the defendant King refused to accept payment of the plaintiff's fine when it was tendered after his suspension.

It will be seen that the only motive for ousting the plaintiff from the union was that attributed to King, who had favored a program which the plaintiff opposed and which the defendant millwrights' local had refused to adopt. This program concerned millwrights' work and was of no concern to the other defendant, the carpenters' local. In other words, the circumstances show no motive for an agreement to expel the plaintiff. Are the other circumstances inconsistent with an honest purpose? The stewards who filed the charges against the plaintiff testified that others who had violated the provision in question had been asked to discontinue the practice and had complied with the request, whereas the plaintiff had refused to co-operate. Their action, therefore, was reasonably justified. The plaintiff has failed to point out what bearing the absence of the president and vice-president at the meeting had upon the conduct of his trial or the existence of a conspiracy, and we can see none.

The plaintiff refused to stand trial, but he knew that the verdict would be read at the next regular meeting, as provided by the constitution, and there was no requirement that he be given written notice. While King's refusal to

tell him what the fine was for may indicate irritation or ill will on his part, it did not amount to the denial of any right of the plaintiff, as he was under no obligation to give this information. This act, standing alone, could hardly give rise to an inference of conspiracy between King and the members of the two locals. The plaintiff's fine was accepted, and he was allowed to pay his dues. Had he not stopped payment on the check, there would have been no ground for expelling him from the union, and if he felt the fine was unjustly imposed, he could have taken his appeal.

 The attempted appeal was abortive, of course, because the plaintiff failed to furnish the receipt for his fine, which was required under the constitution and by-laws. Having failed to avail himself of the internal remedy allowed him by his union constitution, the plaintiff cannot turn to the courts to review the action of the millwrights' local. It is true that where there is a disputed question of fact as to whether a union member's remedies within the union have been exhausted, the determination of that fact is a jury question (*Minch v. Local Union No. 370, International Union of Operating Engineers*, 44 Wn. (2d) 15, 265 P. (2d) 286). We have in this case no such dispute. Nor is there any evidence that the plaintiff's appeal, had it been properly instituted, would have been futile. On the contrary, the national president, after notifying the plaintiff that no action could be taken on his appeal until he had produced evidence that his fine had been paid, undertook to investigate the matter nevertheless and apparently satisfied himself that no injustice had been done.

Section 45 (B) of the union constitution provides:

"Members owing a Local Union a sum equal to six months' dues shall have their names stricken from the list of membership without a vote of the Local Union and such members shall be notified at the last known address by the Financial Secretary of the Local Union during the sixth month of said delinquency. An ex-member desiring to rejoin the Brotherhood may be readmitted only as a new member, subject to such readmission fee as provided for in the By-Laws of the Local Union or District Council where application for membership is made. The Local

Union readmitting the ex-member shall ascertain the reasons for having been dropped from membership and if dropped for non-payment of dues, shall collect an additional sum of Five Dollars ($5.00) to be forwarded to the Local Union where membership was formerly held. If, however, said ex-member owed any fines or assessments at the time of being dropped from membership in the Brotherhood, the Local Union readmitting such ex-member shall collect the amount of the indebtedness and forward it together with the sum of Five Dollars ($5.00) to the Local Union to which the ex-member formerly belonged."

Section 55 (H) provides:

"All fines imposed and assessments legally levied shall be charged by the Financial Secretary to the member from whom due, and shall stand against the member as regular dues and must be paid within thirty days to entitle the member to any privilege, rights or donations of this United Brotherhood. Members working during a strike must pay a strike assessment if levied."

The defendant King and the agents of the carpenters' local interpreted these provisions as providing that a fine equal to six months' dues in the local to which the member pays dues, if not paid within thirty days, disqualifies one to further membership. It is provided that an ex-member may be readmitted upon proper application and payment of the fine and initiation fees, plus a penalty. The plaintiff maintained that the term "six months' dues" refers to the local imposing the fine, where the party on whom it is imposed is not a dues-paying member of that local. Although the amount of the fine was equal to six months' dues in the local to which he belonged, it did not equal six months' dues in the millwrights' local, under whose permit he was working.

Of course, it is not for the jury to interpret the constitution of the union, nor will the courts interfere with the interpretation placed upon such a constitution by its officers and agents unless such interpretation is arbitrary and unreasonable. 87 C. J. S. 776; *Way v. Patton*, 195 Ore. 36, 241 P. (2d) 895; and see *Barnhart v. United Automobile, Aircraft, etc. Workers of America*, 12 N. J. Super. 147, 79 A.

(2d) 88. The provision is ambiguous when applied to a member of one local working under permit from another local, both of which locals are governed by the same constitution, but we do not see that the interpretation urged by the plaintiff is any more reasonable than that adopted by the agents of the union.

Of course, when payment of the fine was tendered after the suspension, the defendant King was under no obligation to accept it, since the only way the plaintiff could regain admission at that time was to make a new application. No inference of bad faith can arise from this action.

It is urged that the evidence supported an inference that the plaintiff's check was accepted in absolute payment of the fine and that the acceptance was not conditioned on the check's being honored when it was presented for payment. This court was asked to draw a similar inference in *Kegley v. Skillman*, 68 Wash. 637, 123 Pac. 1081, where the debtor withdrew his funds from the bank after giving his check. We said that he could not claim that the check was given in payment when he failed to leave the money in the bank with which to meet it. Much less can a debtor claim that his check was given in payment, when he ordered the payment stopped immediately after it was issued. We see no merit to this contention.

A civil conspiracy is defined as a combination of two or more persons agreeing to commit a criminal or unlawful act, or to commit a lawful act by criminal or unlawful means, or as a combination of two or more persons by concerted action to accomplish an unlawful purpose, or some purpose not in itself unlawful by unlawful means. *Harrington v. Richeson*, 40 Wn. (2d) 557, 245 P. (2d) 191. Of course, damage must result to the plaintiff or there is no cause of action. Before a party can be held liable as a conspirator, the evidence must show that such person entered into an agreement with the other conspirators to accomplish the object of the conspiracy. *Dart v. McDonald*, 107 Wash. 537, 182 Pac. 628; *Harrington v. Richeson, supra*.

If we consider the actions of the three defendants separately, we will see that they amount to no more than this:

First, the defendant King had a possible cause for resentment against the plaintiff, because the plaintiff was one of those who spoke against a program which he approved. However, the evidence does not show that he had any part in the suspension of the plaintiff until after the fine had been imposed. Without the imposition of the fine, of course, the suspension would not have occurred. Second, the members of defendant millwrights' local selected a trial committee when the charges were read, and after the report of the committee was read, they voted upon the fine to be imposed. The fine imposed by the membership, incidentally, was only twenty-five dollars, whereas the committee had recommended a fine of one hundred dollars on each count and fifty dollars for contempt. The local had no motive for seeing the plaintiff expelled from the carpenters' local. He was not a member of the millwrights' local, and he had favored the position taken by the majority on the "qualification" program. Third, the carpenters' local took no action, as a body, in regard to the plaintiff. There was no attempt to show any ill will against him in this local. Its agents struck his name from the membership lists when they were notified to do so by the business agent of the millwrights' local, who advised them that he was delinquent in payment of his fine. It is significant that these agents are not named as defendants in the action, nor is any agent of the carpenters' local.

It can only be concluded, as a matter of law, that the plaintiff's evidence falls far short of proving that there was an agreement among the defendants, that is, the business agent of the millwrights' local, the membership of the millwrights' local, and the membership of the carpenters' local, to deprive him of his union membership. On the contrary, the evidence points to but one set of conclusions: that the plaintiff was expelled for refusing to pay his fine; that if there was any irregularity in the imposition of that fine, the plaintiff, knowing the requisite steps for obtaining a review, failed to pursue those steps; and that after his expulsion, he made no serious attempt to regain admission to the union.

Since the plaintiff has failed to show that he was unlawfully expelled from the union, he cannot be heard to complain that the contractors, who are also union members, have refused him employment, as this is a requirement of their union membership and he has been a beneficiary of such membership for many years.

The judgment is reversed.

MALLERY and DONWORTH, JJ., concur.

HILL, C. J. (concurring specially)—I concur in the result. This now somewhat complex litigation resulted from a very simple situation. One of the working rules of the Hanford Works Agreement was that the pay checks be distributed on the employer's time. A. J. Couie, the plaintiff, chose to pick up his pay check on his own time. I do not even construe this as a violation of a working rule. The rule gave Mr. Couie a privilege, or mayhap a right, of which he did not choose to avail himself. This operated to no one's detriment, except his own. Consequently, I do not agree with so much of the majority opinion as suggests that the disciplinary action in the first instance was "reasonably justified."

I agree that Mr. Couie failed to take the proper steps, as provided by intra-union procedure, to secure a review of his conviction for a breach of the rules and of the fine imposed; that his failure so to do culminated in his expulsion, and leaves him in a position where he has no standing in court to complain that his expulsion was unlawful. I agree, too, that no conspiracy was established.