[No. 19573.  Department Two.  March 25, 1926.]

THE STATE OF WASHINGTON, *on the Relation of D. A. Howland, Respondent,* v. OLYMPIA VENEER COMPANY *et al., Appellants.*[1]

[1] CORPORATIONS (54)—CAPITAL STOCK—TRANSFER OF SHARES—REQUISITES OF TRANSFER. A by-law of a corporation organized for profit, assuming to make a stockholder's right to sell his stock dependent upon the unrestrained will of the trustees is void as an unlawful restraint upon the right to sell and purchase the stock.

[2] SAME (146)—CORPORATE POWERS—POWER TO PURCHASE ITS OWN STOCK. By-laws giving the corporation the preference right to purchase its own stock are void.

[3] SAME (54)—STOCK—TRANSFER—REQUISITES. By-laws requiring notice to the corporation before the sale of stock, in order that the corporation may find a suitable person to buy the same at the market value who will be acceptable to the company, can not be invoked where the company, on ample notice, failed to make any effort to find a purchaser or determine the market value.

[1] Reported in 244 Pac. 261.

[4] CORPORATIONS (64)—MANDAMUS: (68)—REGISTRATION OF CORPORATE
SHARES—REMEDIES FOR REFUSAL. Mandamus lies to compel the
officers of a corporation to transfer assigned stock upon the
books of the company, in view of Rem. Comp. Stat.; § 1014
authorizing the writ to compel the performance of an act
especially enjoined by law as a duty resulting from an "office,
trust or station."

Appeal from a judgment of the superior court for
Thurston county, Wright, J., entered April 20, 1925, in
favor of the plaintiff, in an action for a writ of man-
damus to compel entry of transfer of corporate stock.
Affirmed.

*A. W. Tyler,* for appellant.

*James O. Marts* and *Troy & Yantis,* for respondent.

PARKER, J.—The relator, Howland, claiming to be
the owner by assignment of one share of the capital
stock of the Olympia Veneer Company, a domestic
corporation, commenced this action in the superior
court for Thurston county, seeking a writ of mandate
to compel the company and its officers to cause the
ownership of the share of stock to be transferred upon
its books from the assignor to him, and to accord to
him all the rights appertaining to the ownership of
such share of stock. A trial upon the merits resulted
in findings and judgment awarding to Howland the
relief prayed for and directing a writ of mandate to
be issued accordingly, from which judgment the com-
pany and its officers have appealed to this court.

The facts necessary for us to notice, upon which the
contentions of counsel for the respective parties are
rested, are not in dispute, and may be summarized as
follows: The Olympia Veneer Company was duly
organized as an ordinary manufacturing and business
corporation under the laws of this state in the year
1921. While its objects and purposes are stated in
some considerable detail in its articles of incorpora-

tion, it is sufficient for present purposes for us to here note that its articles of incorporation do not suggest that it is organized other than as an ordinary manufacturing and business corporation for the sole ultimate purpose of making financial profit for its stockholders.   There is nothing in its articles of incorporation suggesting that its organization was intended to carry on any business, to any extent, upon a co-operative plan between its stockholders, members or employees.   The company is capitalized at $125,000, divided into 125 shares of stock of the par value of $1,000 each.

On November 15, 1921, C. P. Keating became the owner of one share of the stock, evidenced by certificate in usual form duly issued to him on that day.   On the same day, Keating entered into a written agreement with the company, as did all other stockholders upon becoming owners of stock of the company, wherein it was agreed, among other things, as follows:

"Any stockholder desiring to sell his stock in the company shall notify the secretary in writing, at least thirty days, of his intention and shall in the same notice offer to sell same to the company at the market value of same at the time, the market value being determined by the stockholders.   The board of trustees shall have ten days after the secretary receives such notice in which to decide whether the company shall purchase same."

Other stipulations are contained in these agreements, looking to the company's furnishing employment to the owners of stock while stockholders.   These stipulations seem to have in view the carrying out, in some degree, of cooperative features looking to the payment of the employed stockholders by distribution of profits to them rather than payment of fixed wages.   With these stipulations, however, we are not here concerned,

as we think will presently more fully appear. Among the by-laws of the company are provisions touching the sale and transfer of stock, as follows:

"Section 2. Any person may become a stockholder in, and member of this company (1) by subscribing for stock therein upon the stock books thereof, (2) or by purchasing shares and having the same transferred to him upon the stock books of the company, provided that, except as to those persons whose names appear upon the original stock subscriptions, every person desiring to become such stockholder must be elected to membership in this company by a majority vote of the trustees.

"Section 3. A stockholder shall not be permitted to sell his stock without first permitting the company to buy the same, and in no event shall such share of stock be sold to any person until such sale is submitted to the board of trustees for their approval."

On January 13, 1923, at the annual meeting of the stockholders, a resolution was adopted fixing a minimum price of $750 and a maximum price of $1,500 to be paid by the company for any stock desired to be sold by any stockholder. This resolution seems to have been an effort to determine, or provide for the determining of, the market value of the stock, to render operative the above quoted portion of the agreements between the company and Keating and other stockholders upon their becoming stockholders. This, plainly, was not an actual determination of the market value of the stock, but was a mere book estimate of the minimum and maximum value of the stock in the then opinion of the stockholders.

Prior to and on June 5, 1923, Keating gave notice to the company that he desired and intended to sell his share of stock, and offered to sell the same to the company at its then present market value; further notifying the company that, if the company shall not

have purchased it within thirty days thereafter; he would then sell the same to any purchaser he might find, who would be willing to pay him the market value therefor. On the day following, June 6, 1923, the company, through its president, in a letter addressed to Keating, offered to purchase his share of stock for the sum of $1,500, renewing a previous offer of the same import. Keating refused this offer, giving the company's officers to understand that he regarded the market value of the stock to be over $2,500 at that time. No further offer being made by the company, and no further action being taken looking to the determination of the then market value of the stock by the stockholders, on July 9, 1923, Keating sold his share of stock to the relator Howland for $2,550. There is some evidence in the record, independent of that sale, indicating that to be approximately its market value. Thereupon Keating duly assigned his share of stock to Howland, authorizing its transfer upon the books of the company, delivering the certificate and the assignment to Howland, thus consummating the sale and transfer of the stock as between them. Thereafter on the same day Howland presented to the proper officers of the company the certificate for the share of stock, together with the transfer endorsed thereon from Keating to him, and demanded that such transfer be entered upon the books of the company, and that he be accorded all the rights appertaining to his full and complete ownership of such stock. The officers of the company refused to accede to this demand, basing their refusal upon their claim of rightful exercise of power, under the provisions of the by-laws and agreement above quoted. Soon thereafter Howland commenced this action, the trial of which resulted as we have above noticed.

[1]  It is contended in behalf of the company and its officers that Howland is not entitled to be awarded the relief sought by him, because he has not been elected to membership in the company, and also because the sale of the stock by Keating to him has not been approved by the company's board of trustees, as prescribed by the by-laws of the company above quoted.  These by-laws plainly assume to make the right of the stockholders to sell their stock and the right of others to purchase the stock dependent upon the unrestrained will of the trustees.  This, we think, is plainly an unlawful restraint upon such right of sale and purchase of the stock, this corporation being organized as an ordinary business corporation with the sole ultimate view of making profit for its stockholders. In the text of 7 R. C. L. 263, the law on this subject is well stated as follows:

"The power to regulate the transfer of stock does not authorize a corporation to control its transferability by prescribing to whom the owner may sell, and to whom not, and upon what terms.  And a by-law which provides that a transfer of stock shall be invalid unless approved by the board of directors or other representatives of the corporation is an invalid restraint upon the alienation of the corporate stock.  But a by-law which merely prescribes formalities to be observed in the transfer of stock is not an unreasonable restriction and is not necessarily invalid.  Whether a by-law requiring a stockholder before selling his stock to afford the corporation or other stockholders an opportunity to purchase the same is valid is the subject of conflicting decisions."

In *Miller v. Farmers Milling & Elevator Co.*, 78 Neb. 441, 110 N. W. 995, 126 Am. St. 606, may be found an enlightening review of the authorities supporting this view of the law.  See, also, 14 C. J. 665.

[2]  It is further contended that, by section 3 of the by-laws above quoted and the above quoted provision in the agreement entered into between Keating and the corporation at the time he acquired his stock, the company has the preference right to purchase the stock from Keating. Viewing these by-law and contract provisions as assuming to give to the company the right to purchase the stock for itself, as their terms plainly indicate, they are void, because a corporation organized under the laws of this state has no right or power to purchase its own stock. It was squarely so held by this court in *Kom v. Cody Detective Agency*, 76 Wash. 540, 136 Pac. 1155, 50 L. R. A. (N. S.) 1073, in which decision the subject was exhaustively reviewed.

[3]  Should we view these by-laws and agreement provisions assuming to give to the company the right to purchase the stock, as giving to it the right to find a purchaser of the stock who would be acceptable to it as a stockholder, the company and its officers would be in no better position in their attempt to resist the claim of relief here made by Howland, since what we have already said in summarizing the facts, we think, renders it plain that, upon Keating offering to sell the stock to the corporation, no effort was made to have its stockholders fix the market value of the stock at that time, nor has any would-be purchaser of the stock at its fair or market value been produced by the company, though Howland gave the company and its officers ample opportunity to do so, in the manner prescribed by the by-law and agreement provisions, above quoted.

Viewing this controversy from every possible angle, we are fully convinced that Howland, upon the purchase of the stock, became entitled to all the benefits

appertaining to its ownership, and that, in order to reap such benefits and be protected in that behalf, he has an absolute right, as a matter of law, to have the stock transferred from Keating to himself upon the books of the company. We think it has now been made plain that the so-called cooperative features, attempted to be injected into the management of the affairs of the company, are of no moment in the consideration of the right of its stockholders to sell, and others to purchase, its stock.

[4] Contention is made that mandamus is not a remedy available to Howland to effect the relief he here seeks. This contention might find some support in the authorities, were we required to view such remedy as at common law, apart from our statutes relating to mandamus. However, the remedy so designated by our statutes is merely a form of procedure having in it all the elements of a civil action. By the express provisions of § 1014, Rem. Comp. Stat., this proceeding may be invoked and a judgment rendered therein, in the form of a writ of mandate "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." We think the office, trust or station, in which we find the officers of this corporation, enjoins upon them the duty of causing to be transferred upon the books of the company the stock sold by Keating to Howland. Among the numerous decisions of this court lending support to this conclusion, we note: *State ex rel. Lewis v. Hodge,* 90 Wash. 487, 156 Pac. 404; *Way v. International Portland Cement Co.,* 100 Wash. 182, 170 Pac. 553; *State ex rel. Taro v. Everett,* 101 Wash. 561, 172 Pac. 752, L. R. A. 1918E 411; *State ex rel. Clapp v. Urquhart,* 108 Wash. 299, 183 Pac. 121.

. .This court does not seem to have ever had occasion to enforce, by mandamus, a transfer of stock upon the books of a corporation, in pursuance of a sale and assignment of stock by one of its stockholders to another; but, reasoning by analogy, it seems to us our decisions above cited, and others which might be cited, clearly lead to the conclusion that such remedy is available, when it appears that the purchaser of stock, as here, has the right to have such transfer so evidenced upon the books of the company. The supreme court of South Dakota in *Amidon v. Florence Farmers' Elevator Co.*, 28 S. D. 24, 132 N. W. 166, dealing with facts in substance the same as we have here under consideration, held the statutory mandamus of that state, which is in substance the same as ours, to be an appropriate remedy to enforce the transfer upon the books of a corporation of its stock sold by one of its stockholders to a purchaser invoking that remedy.

The judgment is affirmed.

TOLMAN, C. J., MAIN, MITCHELL, and MACKINTOSH, JJ., concur.