[No. 19782. *En Banc.* February 24, 1927.]

C. E. SIMONDS, *Appellant*, v. JAMES NOLAND, *Respondent*.[1]

[1] CORPORATIONS (146, 149)—PURCHASE AND SALE OF ITS OWN STOCK —REFUNDING PRICE—ACTS ULTRA VIRES. Where fully paid up stock is turned back to the corporation for its use and benefit, it is not *ultra vires* for the corporation to sell it under an agreement to repurchase it and refund the price on certain conditions, the same as it may deal with any other asset.

[2] RELEASE (5) — OPERATION AND EFFECT — JOINT DEBTORS. A guarantor is estopped to assert his release by the release and discharge of his joint guarantors, where a joint guarantee agreement, upon which the guarantee had a cause of action against all the guarantors, was compromised by the surrender of valuable rights to the guarantors and the acceptance of several obligations from each for a pro rata share of the guaranteed debt.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered May 9, 1925, dismissing an action on contract, upon sustaining a demurrer to the complaint. Reversed.

*Rader & Bean,* for appellant.

*H. B. Noland,* for respondent.

MACKINTOSH, C. J.—The appellant filed a complaint against the respondent in which he alleged that, on February 19, 1924, the respondent had executed to the appellant a promissory note in the sum of five hundred

[1]Reported in 253 Pac. 638.

forty dollars which had not been paid according to its terms, and asked judgment for that amount, together with an attorney's fee. The respondent answered admitting the execution of the note, and as a first affirmative defense alleged that it was without consideration; as a second affirmative defense, that, on February 19, 1923, the respondent was a stockholder in the Walla Walla Texas Oil Company; that on that day the appellant made a written contract with that company agreeing to purchase three thousand shares of its capital stock for the sum of four thousand five hundred dollars, and that, in that agreement, it was provided that, if the appellant at the end of one year should not be satisfied with his purchase, upon demand there should be refunded to him the amount of money which he had paid for the stock; that, on that day, and accompanying the contract and as a part of it, a written guarantee was executed by several of the stockholders of the company and delivered to the appellant, these stockholders guaranteeing and promising that the refund would be made; that, in pursuance of the contract, the appellant purchased the three thousand shares of stock and paid the sum of four thousand five hundred dollars; that in conformity with the contract, at least sixty days prior to the expiration of the one year therein provided, the appellant demanded the refund of the money and that that demand was not complied with. It is then alleged that the contract by the corporation to repurchase the stock was against public policy and void, and that the guarantee was therefore illegal and void and not enforceable against the respondent. The third affirmative defense alleged that, before the note sued on was delivered by the respondent to the appellant, the appellant had released eight of the stockholders who had signed the guarantee and that that release and dis-

charge operated as a satisfaction and discharge of the respondent.

To these affirmative defenses, the appellant replied, alleging that, at the time he purchased the stock, the nine stockholders signing the guarantee were the owners of practically all of the capital stock of the company and were responsible to the company in large sums by reason of having individually indorsed its notes and obligations; that the sum of four thousand five hundred dollars which he paid for the stock purchased by him was used by the respondent and the other guarantors in the payment of the obligations of the company for which they were jointly liable along with the company; that the three thousand shares of stock purchased by him had been regularly subscribed and paid for at the time of the organization of the company, and had been returned to the company by the persons so subscribing and paying for it as treasury stock so that the company might use the stock in such manner as it might see fit for its own benefit; that, upon the company refusing to repurchase the stock according to its agreement, the appellant had threatened to bring suit to collect on the guarantee from the respondent and his eight co-guarantors, and that the respondent then with seven of his co-guarantors, offered to compromise the appellant's claim against them by each paying to him the sum of five hundred forty dollars or delivering to him their several promissory notes each in that amount; that, as a part of that compromise, the appellant agreed to assign to these eight guarantors the guarantee agreement and the contract with the company and the three thousand shares of stock, and that this compromise agreement was fully complied with and that the appellant delivered the three thousand shares of stock to one of the guarantors who was acting on behalf of himself

and his co-guarantors, including the respondent, and that the note in suit was executed by the respondent as a part of the compromise agreement and that, upon receipt of that note, the appellant released the respondent from any and all obligations on the guarantee. Subsequent to the filing of this reply, such proceedings were had that a demurrer was sustained to its contents and a judgment was entered dismissing the action with prejudice, and from this judgment the appeal flows.

[1]  The first point to be considered is whether the contract for the repurchase by the oil company was illegal and void.  While it has been often held that such a contract made by a corporation for the repurchase from an original subscriber to its capital stock is against public policy, *ultra vires* and unenforceable (Rem. Comp. Stat., § 3823 [P. C. § 4524]; *Kom v. Cody Detective Agency,* 76 Wash. 540, 136 Pac. 1155; *Duddy-Robinson Co. v. Taylor,* 137 Wash. 304, 242 Pac. 21; *State ex rel. Howland v. Olympia Veneer Co.,* 138 Wash. 144, 244 Pac. 261) it has never been held, where the stock agreed to be repurchased had been regularly subscribed and paid for at the time of the organization of the company, and had been donated or given to the company by those who had subscribed and paid for it so that the corporation might use the stock for its benefit, that an agreement to repurchase such stock could not be lawfully made by the corporation.  When stock, subscribed and fully paid for, is turned back to the corporation, it occupies no different position than any other asset of the corporation which the company has power to sell, and regarding such sale it can make such agreement as the dictates of sound business judgment may demand.  If this company had sold some other asset, for example a piece of machinery, with an agreement to repurchase it, there could be no ques-

tion but what that agreement could be enforced and would not be *ultra vires*. The treasury stock in this case differed in no respect from the machinery in the supposititious case. *Yeaton v. Eagle Oil & Refining Co.*, 4 Wash. 183, 29 Pac. 1051; *Krisch v. Inter-State Fisheries Co.*, 39 Wash. 381, 81 Pac. 855; 14 C. J., pp. 407 and 455; Thompson on Corporations (2d ed.), § 3436.

[2]   The contract having been valid, the guarantee predicated on it was also valid, and there remains only the question of whether the release of that guarantee agreement operates as a release of the respondent on the principle that the release of one party to a joint and several contract releases all. This defense to the note is not available to the respondent, for he is estopped by his conduct to urge it. At the time that the note was executed, the appellant had a cause of action against the respondent and his eight co-guarantors. The respondent caused the appellant to give up that right of action and to accept in lieu thereof his promissory note and the promissory note or payment by other guarantors of their *pro rata* shares of the guaranteed amount. More than that, they received from the appellant a release of his right of action against the company for failure to comply with its repurchase contract. More than that, they secured from him the three thousand shares of stock which he had purchased and for which he had paid four thousand five hundred dollars, and which presumably were of some value. Having agreed with the appellant that he might lose all these rights in this property, the respondent is estopped from now claiming that he has no liability on his note by reason of the co-guarantors being released along with him on the guarantee agreement.

For these reasons, we reach the conclusion that the

dismissal of this action was erroneous; and the judgment is therefore reversed, and the cause returned for such further proceedings as may accord with this conclusion.

All concur.