### In re CULBERTSON'S.

**THOMPSON et al. v. LEGGETT.**

No. 6512.

Circuit Court of Appeals, Ninth Circuit.
Jan. 5, 1932.

Jas. A. Williams and E. A. Cornelius, both of Spokane, Wash., for appellants Thompson, Vaughn, and Elbert.

Clyde H. Belknap, Jas. A. Williams, and E. A. Cornelius, all of Spokane, Wash., for appellant Latham.

Graves, Kizer & Graves, of Spokane, Wash., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court on review affirming the decision of the referee rejecting proof of claims made against the bankrupt by the appellants. The appellants were all holders of certificates of preferred stock in the bankrupt corporation. The claim is that these certificates were in such form and issued in such manner that although denominated "certificates of preferred stock" they were in fact certificates of indebtedness entitling the holder thereof to participate as a creditor in the assets of the bankrupt corporation. The claim is that although the appellants bought and paid for preferred stock in the corporation and believed themselves to be stockholders therein, their claims being therefore postponed to those of creditors of the corporation, they were in fact creditors entitled to pursue the assets of the corporation for reimbursement of the amounts invested in the preferred stock. By referring to the certificates involved as preferred stock, as they are entitled on their face, we do not intend to foreclose further

consideration of the points presented by the appellant. Nevertheless, at the outset we find it difficult to believe that where an individual has purchased a number of shares of preferred stock in a corporation, the certificates issued to him for such preferred stock, designating the number of shares he purchased and the par value thereof, were nevertheless, by reason of the terms thereof, in fact certificates of indebtedness. On this appeal there are involved only three classes of certificates, designated as class "A," class "B," and class "D" certificates, respectively. As already pointed out, these certificates were in the usual form of stock certificates. Each and every of them stated the amount of the capital stock of the corporation, the number of shares into which divided and the number of shares covered by the certificate, provided for the payment of dividends at a specified per centum per annum, payable on specified semiannual dates, and contained a provision to the effect that until such dividend should be paid no dividends should be paid on the common stock. Each and every certificate herein involved contained a provision to the effect that the preferred stock has no voting power, and also a provision for the retirement of the stock covered by the certificate; the terms of this last-mentioned provision varying somewhat in the different classes, as later specified herein. As stated in the "Referee's Certificate on Review," set forth in the record: "Each of these claimants [appellants] at the time of the issue of the preferred stock acquired by such claimant paid to the bankrupt the par value of same, except as to the claim of Vaughn, who caused such value to be paid shortly thereafter in the manner stated above" (as hereinafter set forth).

Of the so-called class A certificates there were six, issued to appellants as follows: To R. C. Thompson, three certificates, being No. 40 for 25 shares and No. 48 for 20 shares, both issued January 19, 1923, and one certificate, No. 54, for 20 shares, issued December 31, 1924; to Edna L. Thompson, one certificate, No. 52, for 40 shares, issued January 28, 1924; and to F. H. Latham two certificates, one being No. 107, for 53 shares, issued July 18, 1928, and No. 121, for 50 shares, issued July 15, 1929. Each and every of said class A certificates recites that it "is issued and held pursuant to resolutions passed by unanimous vote of all stockholders of this company on January 11, 1913, and pursuant to resolutions passed by unanimous vote of the Board of Trustees on January 11th, 1913." In the "Memorandum Opinion" of the referee, appearing in the record, it is stated that: "The wording of certificates in Class A attached to the claims filed herein is identical with that of the form of certificate prescribed by the resolution of January 11, 1913, set forth above * * * except that most if not all of the Class A certificates involved in this controversy provide for 8 per cent. dividends instead of 7 per cent., the 'eight' being written in with ink, the word 'shares' and the number thereof is used instead of the word 'Dollars' in the upper right-hand corner, and with the use of a rubber stamp or handwriting the words 'Culbertson's formerly' are inserted before the words Culbertson-Grote-Rankin Co., whenever those words appear."

Of the class B certificates there were issued two, both to F. H. Latham, being No. A-600, for 50 shares, and No. A-601 for 110 shares, both issued July 15, 1929. The form of class B certificates recites that: "This stock is a part of an issue of Five Thousand (5,000) shares of preferred stock of the par value of One Hundred ($100.00) Dollars each. This certificate entitles the holder to a fixed yearly dividend of eight (8%) per cent. per annum, payable semi-annually, on the 15th day of July and January of each year before any dividend shall be set aside or paid on the common stock, which preferred stock dividend shall be non-cumulative. The preferred stock has no voting power * * *."

The class D certificates involved on this appeal are three, one of them, No. D-670, being issued to F. H. Latham, on January 11, 1928, for 50 shares; one of them, No. D-714, being issued to appellant Elbert, June 15, 1929, for 100 shares; and one of them, No. D-569, being issued to appellant J. A. Vaughn, for 100 shares, under special circumstances hereinafter more fully stated. The form of certificate covering the class D shares recited that: "This stock is part of an issue of Twenty-five Hundred (2500) shares of preferred stock of the par value of One Hundred ($100.00) each. It entitles the holder to a dividend of seven (7%) per annum, payable quarterly on the 15th day of March, June, September, and December of each year (before any dividend shall be set aside or paid on the common stock). This preferred stock has no voting power * * *."

Each of the certificates involved herein, of the various classes, contained a provision for the purchase and retirement of the shares

represented thereby. This provision was not invoked or resorted to by either the shareholders or the company in the case of the class A and class B shares involved herein. But in the case of the class D certificates issued to appellant J. A. Vaughn, the taking up or redemption of the shares represented thereby was invoked by him, under the terms of an agreement entered into by him on behalf of Wyman Partridge & Co. (a mercantile company of which said Vaughn was a member), as hereinafter more fully set forth in connection with consideration of the Vaughn claim. The provisions just referred to, as they are contained in the class A certificates, are as follows: "The said Company will on ———— 19—— pay to the holder of this certificate the par value thereof, together with such dividends as is hereinafter provided for. * * * Said Company reserves the right to retire this stock at any dividend period on or after January 10th, 1918, after giving sixty days' written notice thereof, by paying to the holder its par value, together with all dividends accrued, as herein provided, to the time of such retirement. * * *"

The similar provision in the class B certificates is as follows: "The stock represented by this certificate is subject to retirement on the 15th day of July, 1928, being one of a series of shares of preferred stock redeemable in accordance with resolutions of the Board of Trustees at the rate of not to exceed Fifty Thousand ($50,000.00) Dollars per annum, commencing the 15th day of July, 1926."

Such provision in the class D certificates was as follows: "The corporation agrees to retire this certificate on the ———— day of ————, 19——, by paying the par value thereof and all dividends due thereon. In the event of the liquidation of the corporation before such retirement, the holder of this certificate shall be entitled to participate in the assets of the corporation to the amount of the par value thereof and all dividends due thereon in preference to any distribution to the holders of common stock."

These class D certificates further stated: "This preferred stock has no voting power, and no dividend shall be paid thereon in excess of seven (7%) per annum. The corporation agrees to retire this certificate on the ———— day of ————, 19——, by paying the par value thereof and all dividends due thereon. In the event of the liquidation of the corporation before such retirement, the holder of this certificate shall be entitled to participate in the assets of the corporation to the amount of the par value thereof and all dividends due thereon in preference to any distribution to the holders of the common stock."

These class D certificates have upon the back thereof the joint and several guaranty of F. R. Culbertson and R. K. Neill of the prompt payment of the quarterly dividends upon the stock represented by this certificate, and the prompt payment of the par value thereof upon its retirement or upon the liquidation of the company.

It is contended on behalf of appellants that this agreement to repay the value of the stock and dividends constitutes evidence of a loan to be repaid at the time and at the rate of interest therein designated. But it is not permissible to segregate one clause of the agreement and base a judicial decision thereon. It is apparent that it was the intention of the parties that these certificates should evidence the right of the holders thereof to participate in the earnings of the corporation as holders of preferred stock entitled, by reason thereof, to receipt of the agreed proportion of the net earnings they were to receive before holders of common stock were entitled to share in such earnings. The decision of the referee, upheld by the District Court upon review, was correct in so far as the legal effect of these certificates is concerned. While it is true that the actual character of the certificate is determinative of its legal effect (Spencer v. Smith [C. C. A.] 201 F. 647; Booth v. Union Fibre Co., 137 Minn. 7, 162 N. W. 677; Heller v. Nat. Marine Bank, 89 Md. 602, 43 A. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212; Cook v. Equitable Bldg. & Loan Ass'n, 104 Ga. 814, 30 S. E. 911; Best v. Oklahoma Mill Co., 124 Okl. 135, 253 P. 1005), there is nothing in the certificate in question which justifies the conclusion that it was intended to be other than what it purported on its face to be, namely, a certificate of preferred stock. It shows on its face that it has the main characteristic of preferred stock, namely, a right conferred on the holders thereof "to receive dividends on their shares, to the extent agreed upon, before any dividends at all are paid to the holders of the common stock." 6 Fletcher on Corporations, p. 6002, and cases there cited. The fact that the right to vote is withheld from the holder of the stock in question does not deprive it of the character of preferred stock, because in section 3812 of Remington's Compiled Statutes of Wash.

ington, enacted in 1919, it is provided, in the first paragraph of said section: " * * * That any corporation issuing preferred stock in accordance with the provisions hereinafter contained applicable thereto may provide that such preferred stock shall have no voting power or shall have only such limited· or conditional voting power as may be specified." And the first paragraph of subdivision 4 of this section provides that: "In the case of corporations heretofore organized where provisions regarding preferred stock have received either formally or informally the unanimous approval or acquiescence of the stockholders, preferred stock may be issued in accordance with such provisions, all preferred stock heretofore issued not inconsistent with the provisions of this act is hereby validated."

█ All of the certificates of stock involved on this appeal were issued after the enactment of the 1919 statute above quoted. As regards the provision contained in the stock certificates referred to that the company reserves the right to retire this stock at any of the periods therein specified by paying the holder the par value and accrued dividends, this too is recognized by the Washington statute of 1919 as a legal provision subject to specified limitations in the case of preferred stock. Reference may here be made to the last paragraph of subdivision 4 of said section 3812, which is as follows: "Where the provisions heretofore or hereafter adopted by the corporation under which preferred stock is issued provide for the calling in or redemption of such preferred stock or any part thereof, it shall be lawful for the corporation to call in and redeem the same in accordance with such provisions by filing in the offices designated in subdivision 2 [in the office of the secretary of state and in the office of the county auditor of the county where the principal place of business of the corporation is located], a certificate signed and sworn to by the president or a vice-president, and by the secretary or assistant secretary of the corporation, showing compliance with the provisions adopted by the corporation concerning the calling in or redemption of such preferred stock, and also showing the amount of capital actually paid in, the whole amount of debts and liabilities of the corporation and the amount to which the capital stock is to be diminished: Provided, that no calling in or redemption of preferred stock shall be made which would have the effect of reducing the capital stock in violation of the provisions of section 3830."

The provision of said section 3830 which is pertinent to the matter under consideration prescribes that "before any corporation shall be entitled to diminish the amount of its capital stock, if the amount of its debts and liabilities shall exceed the sum to which the capital is proposed to be diminished, such amount shall be satisfied and reduced so as not to exceed the diminished amount of the capital." This statutory condition imposed upon the right or privilege of calling in or redeeming preferred stock, although not expressed in the retirement provisions of any of the certificates here involved, is, upon a familiar legal principle, to be read into those provisions. Armour Packing Co. v. United States (C. C. A.) 153 F. 1, 19, 14 L. R. A. (N. S.) 400; Compagnie Generale, etc., v. American Tobacco Co. (C. C. A.) 31 F.(2d) 663, 666. If, as we have held, this agreement constituted the holder thereof a stockholder, the fact that it provides for the redemption of a certificate does not constitute the holder a creditor (14 C. J. 417), and the agreement to pay dividends at stated intervals must be construed to be an agreement to pay the same from the profits. 14 C. J. 419; Hazel Atlas Glass Co. v. Van Dyk & Reeves (C. C. A.) 8 F.(2d) 716; see also Lockhart v. Van Alstyne, 31 Mich. 76, 18 Am. Rep. 156.

There are other considerations advanced by the appellants for the allowance of their claims which we will now consider, and in doing so it will perhaps promote clarity to state these contentions in the language of the appellants as follows:

"2. The certificates, which provide for 8 per cent dividends and with an absolute obligation to pay at a maturity date construed as preferred stock were without authority in that the resolution of January 11, 1913, and the amendments to the articles of incorporation limited dividends to 7 per cent, and the amendments to the articles of incorporation gave no authority to agree upon a fixed dividend or to obligate the corporation to pay the principal at any fixed time.

"3. If the contracts construed as preferred stock were void then appellants were entitled to recover, as for money had and received, or, on other equitable principles, since appellants had received nothing of value as a consideration for the money paid. * * *

"6. These contracts were construed over a period of many years by the bankrupt and

the holders as creating a debt. The bankrupt paid in the same manner as it would discharge any other debt, paid principal and interest irrespective of there being any profits, carried them on its books as liabilities, and never declared dividends out of which to make payments. The construction thus placed, if the instruments are ambiguous is controlling. * * *

"7. At the time the resolution of January 11, 1913, was adopted, which in Class 'A' certificates it is recited was authority for their issuance, there was no preferred stock statute in the state of Washington. * * *

"11. The certificates issued, providing for 8 per cent dividends and a maturity date of the principal, were ultra vires, if construed as preferred stock, and were unenforceable against the bankrupt. * * * "

The point (2) above stated is based partly upon the fact that the so-called class A certificates state on their face that they are issued under the provisions of a resolution of the board of directors of January 11, 1913. On January 11, 1913, the law of the state of Washington did not authorize the issuance of preferred stock, although subsequent thereto laws were enacted in the state of Washington (2 Remington's Comp. Stats. 1922, § 3812, passed in 1919), permitting the issuance of preferred stock and ratifying such issues as had theretofore been made. The stock in question was issued after the passage of this statute and after the amendment of the articles of incorporation of the bankrupt so as to expressly authorize the issuance of preferred stock.

■ The fact that the printed form of the certificates of preferred stock issued to appellants erroneously referred to the resolution of January 11, 1913, as authority for their issuance, has no significance whatever in determining the character of relationship constituted by the certificate if the corporation, by the amendment of its charter, or otherwise, had power to issue the same. But the appellant also claims that the corporation had no right to make an agreement for 8 per cent. dividend, or class A preferred stock, as the above-quoted resolution referred to in the certificate and the amendments to the articles of incorporation fixed the amount of dividends on class A preferred stock at 7 per cent. Assuming this to be true as to class A stock, the amended articles of incorporation expressly authorized 8 per cent. on preferred stock above classified as class A. We think that both the corporation and the holder of stock designated as "preferred stock," class A, having entered into a contract for the payment of 8 per cent. dividends evidenced by the certificate of stock and having mutually profited thereby, neither is in position at this late day, as against the creditors of the bankrupt corporation or their representative, to claim that the agreement was invalid and unauthorized because there was an agreement to pay dividends of 8 per cent. instead of 7 per cent., and thus because of this irregularity, to change the relation of the claim from that of stockholder in the corporation to that of creditor of the corporation to the disadvantage of the other creditors. U. S. Fidelity & G. Co. v. Cascade Construction Co., 106 Wash. 478, 485, 180 P. 463.

"Stock which a corporation has no power to issue is void. Such stock confers upon its holder no rights and subjects him to no burdens. Nothing that he or the corporation can do will give it validity. On the other hand, stock which the corporation has power to issue, but issues irregularly, is valid as to the holder, and in a suit for the payment of such stock he may not defend on the ground that it was irregularly issued. The state alone may raise the question of irregularity." In re Rombach & Co. (C. C. A. 3) 9 F.(2d) 359, 360.

As to appellants' contention, in point (6), to the effect that because they were paid "dividends" upon their stock regularly over a long period of time regardless of the actual earnings of the corporation, this fact should control in the interpretation of their contract and fix their relationship as that of debtor and creditor, it is to be said that there is no ambiguity or uncertainty in the contract. The contract calls for the payment of dividends and not interest. The conduct of the parties to the contrary cannot change or modify the express terms of their written contract.

■ Appellants contend that there was an overissue of preferred stock at the time appellants' stock was issued, and consequently that the relation of debtor and creditor was established by the transaction between the parties. This contention is based upon the practice of the bankrupt upon redeeming outstanding certificates of preferred stock to sell new certificates in lieu thereof. If such purchase or redemption did not decrease the authorized capital stock, there is nothing in the point. The claim is that the capital stock is decreased when the preferred stock was purchased or redeemed.

This claim involves the assumption that the corporation had a right to reduce its capital stock by purchasing or redeeming certificates of stock. This cannot be done under the law of the state of Washington (Remington's Comp. Stats. 1922, §§ 3805, 3823, 3830, 3832). This statute expressly provides that "no calling in or redemption of preferred stock shall be made which would have the effect of reducing the capital stock in violation of the provisions of section 3830" (section 3812). The legal effect of the transaction was the transfer of the stock from the original holder to the new purchaser through the medium of the corporation, and the temporary impounding of the stock in the corporate treasury did not change this situation. Simonds v. Noland, 142 Wash. 423, 253 P. 638; Krisch v. Inter-State Fisheries Co., 39 Wash. 381, 81 P. 855; 14 C. J. 492; 5 Fletcher, Cyc. Corp. p. 5720, § 3470; Borg v. International Silver Co. (C. C. A.) 11 F.(2d) 147. We conclude that the reissue of stock purchased by the appellants does not constitute an over-issue.

It is conceded, and it is obvious, that the other stock certificates of appellants were less susceptible of the construction that they created the relationship of debtor and creditor than the certificates already discussed as class A certificates; it is unnecessary to deal with these classes separately. What has been said disposes of the question. They were all certificates of preferred stock and constituted the holder thereof stockholders and not creditors.

■■■ We come now to consideration of the Vaughn claim, the material facts relating to which are in substance as follows:

Appellant J. A. Vaughn in the fall of 1925 purchased, for the consideration of merchandise sold and to be sold and delivered by Wyman, Partridge & Co. (a wholesale corporation of which Mr. Vaughn was president) to Culbertson's, class D certificates having a face value of $25,000, in pursuance of a written proposal dated September 12, 1925, by J. A. Vaughn, and counter proposal of September 15 by Culbertson's as follows:

"I will take $25,000 of your 7 per cent preferred stock personally guaranteed by yourself and your Mr. R. K. Neill. This stock as I understand it is to mature $10,000 June 15th, 1930, $10,000 June 15th, 1931, $5,000 June 15th, 1932. You may issue the stock to me at an early date, the same to be paid for in merchandise to be shipped by Wyman, Partridge & Co. on your orders. In consideration of this purchase you or your successors are in turn to purchase from Wyman, Partridge & Co. merchandise to the extent of $50,000 or more per annum until the final maturity of this stock which will be in 1932.

"It is understood that Wyman, Partridge & Co. are to sell you merchandise at market prices, you in turn to take care of your bills promptly. If at any time during the period of this arrangement your credit becomes impaired it will be their privilege to decline shipment. Should this arrangement prove unsatisfactory or unworkable to either you or Wyman, Partridge & Company it will be the privilege of either you or Wyman, Partridge & Co. to terminate the same at once, in such event you to take up my stock within thirty days from date of termination and to pay me par value with accrued interest from date of last dividend at the rate of 7 per cent.

"If the arrangement herein contained is satisfactory will you kindly confirm same by letter?"

The counter proposal is as follows: "It being further understood that should we, through any fault of ours, fail to purchase the amount specified above, or should we fail to pay our invoices according to terms, within thirty days of due date, then in that event you are privileged to terminate this agreement, and we will redeem said stock at par, with accrued interest, upon thirty days notice to us."

May 20, 1929, Vaughn notified the bankrupt as follows:

"You and the writer have had more or less correspondence and conversation from time to time regarding the agreement which we are working under. It has not worked out, as you know, entirely satisfactorily from a volume standpoint, and recently you have been behind on your payments for merchandise, so that I am therefore notifying you of my desire to discontinue the same.

"In accordance with our understanding, this gives you thirty days from this date to take up my stock with accrued interest from the date of the last dividend."

Culbertson's agreed to take up the stock by the end of the year 1929, Vaughn consenting that the amount thereof should be paid $5,000 July 15, $5,000 September 15, $5,000 October 15, $5,000 November 15, and $5,000 December 15, 1929, with interest. Accordingly, between August 12, 1929, and April 8, 1930, Culbertson's made payments there-

on aggregating $21,329.20, "leaving a balance unpaid at the date of filing the petition for adjudication [May 21, 1930] of $2,913.67. All of Vaughn's stock certificates were surrendered by him to Culbertson's as payments were made thereon, the last certificate surrendered, being certificate D-569 for one hundred shares of preferred stock," for which he was paid the par value thereof with interest, less $2,913.67 for which appellant Vaughn filed his claim in bankruptcy.

Appellants contend that the Vaughn transaction amounted to nothing more than a loan, notwithstanding the certificates were issued, but that if construed as a purchase by Vaughn of the certificates, it was a conditional purchase only, of increased capital, with the right reserved to rescind; and that, the rescission being consented to by the bankrupt long before the adjudication in bankruptcy, Mr. Vaughn had a provable claim.

The contract under which Vaughn secured the stock was clearly one for the purchase of preferred stock with a supplemental agreement for the purchase and sale of merchandise and an agreement that either party could terminate the agreement in toto whenever he elected to do so, whereupon it was to be the duty of the corporation to pay Vaughn the par value thereof with accrued interest for his preferred stock. The agreement, so far as we are concerned with it here, is clearly one for the repurchase by the corporation of its stock, and we must consider its legal effect in that aspect.

A contract by a corporation to repurchase its stock is ordinarily void under the law of the state of Washington. Section 3823 of Rem. Comp. Stat., so far as pertinent here, provides: "It shall not be lawful for the trustees to make any dividend except from the net profits arising from the business of the corporation, nor divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the company, nor to reduce the capital stock of the company unless in the manner prescribed in this chapter, or the articles of incorporation or by-laws. * * * "

In Simonds v. Noland, 142 Wash. 423, 426, 253 P. 638, 639, it is said: " * * * It has been often held that such a contract made by a corporation for the repurchase from an original subscriber to its capital stock is against public policy, ultra vires, and unenforceable (Rem. Comp. Stat. § 3823 [P. C. § 4524], as amended by Laws 1923, p. 543, § 2; Kom v. Cody Detective Agency, 76 Wash. 540, 136 P. 1155 [50 L. R. A. (N. S.) 1073]; Duddy-Robinson Co. v. Taylor, 137 Wash. 304, 242 P. 21; State ex rel. Howland v. Olympia Veneer Co., 138 Wash. 144, 244 P. 261)."

As affecting the validity of the repurchase of the Vaughn shares, reference is here made to the provisions contained in sections 3812 and 3830, previously quoted herein, which forbid a corporation from calling in or redeeming its preferred stock where to do so would cause the amount of the corporate debts and liabilities to exceed the amount to which the capital would thereby be diminished. Vaughn has not brought himself within either of the exceptions mentioned in the above-quoted decision and statutory provisions. The burden was upon him to show that under the conditions existing at the time of the attempted repurchase or retirement of the shares represented by certificate No. D-569, such retirement was authorized by law. The record does not show, nor does counsel for appellants contend, either that the stock had, before the agreement with Vaughn was entered into, been subscribed and fully paid for and returned to the ownership of the company to be held as stock in the nature of treasury stock; or that the diminution of capital which would have resulted from the repurchase and return of shares previously issued to Vaughn did not cause the amount of Culbertson's debts and liabilities to exceed the amount of the capital so diminished. In the absence of such a showing, the claim of appellant Vaughn for the unpaid balance due upon the uncompleted repurchase of the shares represented by certificate No. D-569 is invalid and unenforceable.

The order of the District Court affirming the decision of the referee rejecting proof of all the claims of the appellants herein is, therefore, affirmed.