### NORTHERN TEXAS TELEPHONE CO. v. CITY OF SHERMAN, TEX., et al.
### No. 121.

District Court, E. D. Texas, Sherman Division. July 25, 1933.

F. C. Dillard and Head, Dillard, Maxey-Freeman & McReynolds, all of Sherman, Tex., and C. E. Cowherd, of Kansas City, Mo., for plaintiff.

Geo. L. Hamilton, of Sherman, Tex., for defendants.

KENNERLY, District Judge.

Defendant the city of Sherman, Tex., is a municipal corporation existing under the laws of Texas, and situated in this district and division. Plaintiff, the Northern Texas Telephone Company, is a Texas corporation, with its domicile in the city of Sherman. Plaintiff owns, and under a franchise from the city of Sherman, dated February 24, 1930, operates, a telephone exchange system there, furnishing telephone service to its inhabitants and others. April 10, 1933, the city commission of Sherman passed an ordinance, reducing the rates permitted and allowed to be charged by plaintiff for such telephone service. Complaining that such reduced rates are not fair and reasonable, but are confiscatory, etc., plaintiff, May 1, 1933, filed its bill in equity, against the city, its city commission, and city manager, seeking a temporary restraining order, a preliminary injunction, and, on final hearing, permanent injunction (28 USCA § 381), restraining the enforcement of such ordinance and such reduction of the rates. After a hearing, a temporary restraining order was granted, May 6, 1933, by Hon. Randolph Bryant, judge of this court, and it is still in force. This is a hearing of plaintiff's application for preliminary injunction on plaintiff's bill, defendants' motion to dismiss and answer, and affidavits.

Plaintiff's bill sets forth: That Sherman is a Texas municipal corporation of more than 5,000 inhabitants, and in March, 1915, adopted a special charter under which it is operating, and that it is a home rule city under title 28, chapter 13, Revised Civil Statutes of Texas of 1925 and amendments (Vernon's Ann. Civ. St. Tex. art. 1165 et seq.). That, under the provisions of such charter and the law governing such cities, the city commission of Sherman has the right to fix fair and reasonable rates to be charged by plaintiff for telephone service in Sherman. That April 10, 1933, such commission passed Ordinance No. 1470, wherein and whereby such rates were largely and materially reduced, and were fixed at a monthly charge of $5 for each private business telephone, $1 for each business extension telephone, $2.25 for each private line residence telephone, $1.75 for each party line residence telephone, $.50 for each private residence extension telephone. That the present fair value of all the property of plaintiff used and useful in rendering exchange telephone service in Sherman is not less than $375,644, and that it is necessary for plaintiff to set aside each year not less than $17,709.29, as a reserve to take care of accruing depreciation on such of said property as is depreciable. That, if plaintiff is required to charge and collect the rates fixed by Ordinance No. 1470, it will result in such a reduction in its revenue and earnings that, after deducting the cost and expense of the most economical operation of such exchange, etc., and lawful depreciation, etc., there will be left only an income equivalent to an annual return of 2.45 per cent. on the present fair value ($375,644), whereas heretofore, over a period of four years, there has been left under present rates, and similar depreciation and economical management, income equivalent to an annual return of 5.78 per cent. on such value, and plaintiff is entitled to income equivalent to an 8 per cent. annual return on such value.

Plaintiff, in its pleadings, sums up the result as follows: "That said rates prescribed in said Ordinance are each and all inadequate and unreasonable and so low as to be confiscatory and so as to deprive plaintiff of its property used and useful in furnishing local exchange service at said exchange without due process of law and to deny plaintiff the equal protection of the law, all in violation of the Fourteenth Amendment to the Constitution of the United States; that plaintiff ought not to be required to furnish telephone service at said exchange for such inadequate, unreasonable and unlawful rates."

1. Defendants have filed motion to dismiss and answer Equity Rules 29 and 30 (28 USCA § 723). Because of plaintiff's insistence that its bill shall be deemed confessed (Equity Rule 30), and in the interest of orderly presentation of cases to the court, it is felt that some observations should be made respecting defendants' pleadings.

Equity Rule 29 provides that every defense *in point of law arising upon the face of the bill,* whether for misjoinder, nonjoinder, or insufficiency of fact to constitute a valid cause of action in equity, shall be made by motion to dismiss or in the answer. The grounds of defendants' motion to dismiss are not so clearly and succinctly stated as the rules require.

Equity Rule 30 provides that defendant, in his answer, shall set out in short and simple terms his defense to *each claim* asserted in the bill, omitting mere statements of evidence, and *avoiding general denials, but specifically admitting, denying, or explaining the facts upon which the plaintiff relies,* unless he is without knowledge, in which event he shall so state, and this shall be treated as a denial, etc. Defendants follow their motion to dismiss (contained in paragraph I) with their answer (paragraphs II, III, IV, V, and VI), in which they fall far short of compliance with Rule 30. For that reason, plaintiff, as stated, seeks to have its bill deemed confessed. If this was not a case involving rights of the public, I would feel inclined to so treat defendants' answer. But the court has wide discretion in such matters, and defendants will only be required to file pleadings in compliance with the rules, before final hearing on the merits.

■ 2. The first ground of defendants' motion to dismiss is that plaintiff has a plain, adequate, and complete remedy *at law,* and therefore, has no standing in this, a court of *equity.* In such motion, in the argument at the bar, and in the briefs, defendants point to the district court of Grayson county, in which county the city of Sherman is situated, as the tribunal where plaintiff may have its remedy *at law.* And in the argument at the bar and in the briefs defendants rely upon article 1125 et seq., Texas Revised Civil Statutes of 1925, as pointing out the remedy *at law.*

I am cited to no Texas case where the precise point is decided, but an examination of such articles [1] (articles 1125, 1126, 1127,

1128, 1129, 1130, 1131, 1132) convinces me that the jurisdiction of a state district court may be invoked thereunder only by a city, and/or its governing body, and not by a utility. The Texas cases arising under such articles (Fink v. City of Clarendon [Tex. Civ.

lution setting forth the matters complained of, naming the corporation against which the complaint is made, and in a general way the reasons for such complaint, and shall cause a copy of the same to be delivered to the president, vice president or secretary of said corporation, or cause to be left a copy of said resolution at the principal office of such corporation.

"Art. 1127. (1027) *Suit.*—If, within twenty days after the said corporation has been furnished with a copy of the resolution of the city council, the wrongs complained of shall not be corrected to the satisfaction of the city council, a petition setting forth the wrongs and grievances complained of, and stating the relief sought, may be filed in the name of the city or town as plaintiff against the corporation as defendant in any district court of the county in which such city or town may be situated. Process shall be issued upon said petition, and be served upon such corporation as now provided by law in civil cases. The case shall be set for trial in the same manner as other civil cases, except that it shall have precedence over all cases of a different character filed in such court as to the time of trial. Process shall issue in said cause in the same manner as process may issue in civil cases. The right of trial by jury of the issues involved shall also be given upon the demand of either party.

"Art. 1128. (1028) *Trial.*—Upon the trial of the cause, the court or jury, in arriving at a decision as to whether or not the rates complained of are reasonable or extortionate, and in fixing the rates, shall consider the cost of construction of the plant of the public utility corporation against which the petition is filed, the cost of the operation of such plant, its maintenance and repairs, the fixed charges that may be against the corporation, amount invested in such plant, and such other matters as may be material to the issues. The court trying the same shall have the power to order the corporation to make profert of its books and records for inspection in court in determining the question in issue. After a full hearing of all the evidence adduced, the court or jury shall have power, and it shall be their duty to fix the rates which may be charged by such public utility corporation; provided, that the rates fixed must be sufficient to yield such public utility company not less than ten per cent upon the investment, and the same shall continue in force for a period of three years. The rates fixed shall be entered of record upon the minutes of the court, and shall be held conclusive, as reasonable, fair, and just, and shall remain for three years as the rates to be charged by such corporation, unless changed or modified by the judgment of said district court, or by the appellate courts to which either of the parties to said suit may appeal, or have writ of error.

"Art. 1129. (1029) *Appeal.*—If either party to the suit shall be dissatisfied with the decision of the court and the rate thereby established, an appeal may be taken by either party to the proper court of civil appeals, and said appeal shall be at once returnable to said court of civil appeals, and shall have precedence in such court of all cases of a different character therein pending. The parties to said suit may apply to the Supreme Court for a writ of error.

"Art. 1130. (1030) *Enforcement.*—When the final judgment is rendered in any cause fixing the rates to be charged by said corporation, the court rendering such judgment shall order in its decree the enforcement of the same; and is authorized and empowered to provide in its decree that, if the same is not obeyed according to the terms thereof, the said

---

[1] "Art. 1125. (1025) *Excessive rates.*—All extortionate and unreasonable rates charged by public utility corporations, as hereinafter defined, are hereby declared to be unlawful; and the district courts of this State are hereby vested with jurisdiction and full power and authority to regulate, prevent and abolish the same; and said courts are given the power and authority whenever the public interest may require, to fix and establish rates for the service and products of all public utility corporations, and whenever the public interest may require and to carry out the provisions herein conferred, said courts are hereby expressly authorized to issue injunctions, quo warranto, and all other writs for the purpose of carrying out and making effective the purposes of this chapter, and said writs shall be governed by the rules and regulations now prescribed by law. *No proceeding shall be begun in the district court having for its purpose the fixing of rates of public utility corporations until and unless the city council of the city or town desiring to invoke the power herein conferred upon the district courts shall comply with the provisions of the succeeding article.*

"Art. 1126. (1026) *Complaint.*—If the city council of any city or town incorporated under the general laws of this State, shall desire to invoke the power of the district court granted in the preceding article, such council shall, by a two-thirds vote of all the members elected to said council, pass a reso-

App.] 282 S. W. 912, 913; City of Uvalde v. Uvalde Electric & Ice Co. [Tex. Civ. App.] 235 S. W. 625, 626) are cases in which the city, or its governing body, moved, and not the utility. In the case last mentioned, while the question was not before the court, Judge Fly, of the San Antonio Court of Civil Appeals, uses this language (italics mine): *"Article 1025 declares extortionate and unreasonable rates charged by public utility companies unlawful, and district courts are given full power to regulate, prevent, and abolish the same. Article 1026 provides the method to be followed by the city in invoking the powers of the district court."*

It is clear that, under such articles, plaintiff has no remedy *at law.*

This view renders it unnecessary to decide the other questions raised regarding such articles.

It is true, of course, that this court and the district court of Grayson county, as courts of *equity,* have concurrent jurisdiction of plaintiff's bill attacking such Ordinance No. 1470 and the rates fixed thereunder as confiscatory, etc., but it is well settled that plaintiff may elect to proceed here instead of there.

█ 3. Plaintiff, in its bill, alleges that it has, at this time, approximately 2,361 telephone subscribers in the city of Sherman, and the average monthly bill of each is not more than $3.50, that, notwithstanding such Ordinance No. 1470 is confiscatory, as claimed, defendants will, unless enjoined, undertake to enforce it against plaintiff, and that such subscribers, or many of them, will refuse to pay

corporation shall forfeit its charter if the same be a domestic corporation, or its permit to do business in this State if the corporation be a foreign corporation. If said order or decree be violated, it shall be the duty of the Attorney General, or county or district attorney, under the direction of the Attorney General, to institute suit in the district court of the county in which such corporation may have its principal office, or in Travis County, for the forfeiture of the charter of such corporation, or the cancellation of its permit, as the case may be, and, if said charter be forfeited or permit canceled, the offending corporation shall thereafter be prohibited from carrying on its business within this State.

"Art. 1131. (1031) *Corporations affected.*—The public utilities included within the meaning of this subdivision are defined to be water companies furnishing water to the public; gas companies furnishing gas to the public, electric light or power companies furnishing light or power to the public; telephone companies furnishing telephones to the public; sewerage companies conducting sewerage for the public, whether said companies are incorporated under the laws of this or a foreign State.

Art. 1132. (1032) *Cities affected.*—Any city within this State, incorporated under a special law, may at its option, avail itself of the provisions of this subdivision, but the same shall be cumulative of any other method which may now be provided in such special charter, and this law shall not repeal any provisions of such special charters."

their monthly bills under the present rates, and there will be no practical way whereby plaintiff may collect same, except by refusing service to such customers, which will give rise to a multiplicity of suits, and plaintiff will be put to the necessity and expense of defending such suits, etc.

In the second ground of defendants' motion to dismiss, they *deny* this, and allege that such allegation or claim should not be considered by this court "for the purpose of invoking the jurisdiction in this Court." Such denial, of course, has no proper place in a motion to dismiss. Equity Rule 29. It is also true that the allegations in plaintiff's bill are admitted by the motion to dismiss. See Hill v. Wallace, 259 U. S. 61, 42 S. Ct. 453, 66 L. Ed. 827.

█ The jurisdiction of this court, under subdivision 1, § 41, title 28 USCA, clearly appears from plaintiff's bill, alleging that it will be, and is about to be, deprived of its property without due process of law, in violation of the Fourteenth Amendment to the Constitution of the United States, and the allegation as to the multipliciy of suits is not, I take it, intended to confer jurisdiction on this court, but as one of several allegations invoking the equity powers of the court. See 21 Corpus Juris, pp. 72–82.

█ 4. The last ground of defendants' motion to dismiss is that plaintiff should be denied all relief prayed for, because of the provisions of plaintiff's franchise. Apparently the claim is that the franchise contains provisions which estop plaintiff from complaining of the rates fixed by Ordinance No. 1470 and that same are unfair, unreasonable, and confiscatory. This question, under the wording of plaintiff's bill, may not be raised by motion to dismiss. See Equity Rule 29. And if by the exercise of great liberality towards defendants' pleadings, such ground for dismissal be regarded as a part of defendants' answer, there is no evidence offered by either party on this hearing which sustains defendants' contention.

5. Construing defendants' motion to dismiss as testing the sufficiency generally of plaintiff's bill, although it probably does not have that effect, and considering plaintiff's bill as admitted, on such motion to dismiss (Hill v. Wallace, supra), I think it clear that under the authorities, plaintiff's bill shows, upon its face, both jurisdiction here and equity.

█ 6. In paragraph 11 of defendants' answer, they bring forward the claim that, even

though the rates fixed by Ordinance No. 1470 are confiscatory, plaintiff has heretofore obtained an increase or increases in rates upon an agreement or agreements to make certain additions to, and improvements of, its properties, which it has failed to do. Without regard to what the evidence may be on final hearing on the merits, there is neither sufficient evidence here now of such an agreement or agreements, nor of plaintiff's failure to comply therewith, to justify or support a finding in defendants' favor on that issue. Besides, it is clear that the property of a utility may not be confiscated because of its failure to comply with an agreement or agreements such as it is claimed existed. Newton v. Consolidated Gas Company, 258 U. S. 176, 42 S. Ct. 264, 66 L. Ed. 549; City of Amarillo v. Southwestern Telegraph & Telephone Company (C. C. A.) 253 F. 638, 639.

7. Treating the remaining portions of defendants' answer as putting in issue all the allegations of plaintiff's bill, and considering the evidence offered by the parties in the light of the authorities, including one of the latest decisions of the Supreme Court, strongly presented by defendants (Los Angeles Gas & Electric Corporation v. Railroad Commission, 289 U. S. 287, 53 S. Ct. 637, 77 L. Ed. 1180, decided May 8, 1933), I think what is said by the Supreme Court in Ohio Oil Company v. Conway, 279 U. S. 814, 49 S. Ct. 256, 73 L. Ed. 973, is peculiarly applicable:

"The application for an interlocutory injunction was submitted on ex parte affidavits, which are harmonious in some particulars and contradictory in others. The affidavits, especially those for the defendant, are open to the criticism that on some points mere conclusions are given, instead of primary facts. But enough appears to make it plain that there is a real dispute over material questions of fact, which cannot be satisfactorily resolved upon the present affidavits, and yet must be resolved before the constitutional validity of the amendatory statute can be determined.

"The statute provides for the enforced payment of the tax quarterly in each year. If the tax be paid during the pendency of the suit, and the statute be adjudged invalid by the final decree, the plaintiff will be remediless. The laws of the state afford no remedy whereby restitution of the money so paid may be enforced, even where the payment is under both protest and compulsion.

"Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted. Love v. Atchison, Topeka & Santa Fe R. Co. (C. C. A.) 185 F. 321, 331, 332."

Reserving for determination on final hearing on the merits the issues of fact raised, it is sufficient to say now that, under the rule just stated (Ohio Oil Company v. Conway, supra), plaintiff is entitled to preliminary injunction as prayed for, upon insuring by bond and/or deposit of funds (see 28 USCA § 382; San Francisco Gas & Electric Co. v. City and County of San Francisco [C. C.] 164 F. 884; City of Amarillo v. Southwestern Telegraph & Telephone Co. [C. C.] 253 F. 638, 639) the payment to defendants of such costs and damages as may be incurred or suffered by them and the repayment to plaintiff's subscribers of the difference between the amounts already or hereafter paid plaintiff subsequent to the passage of such Ordinance No. 1470, under the present rates, and the rates fixed by such ordinance, in the event such restraining order and preliminary injunction are finally adjudged to have been wrongfully issued.